JOHN D. AND ALICE G. JONES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 1830-76.
United States Tax Court
T.C. Memo 1978-329; 1978 Tax Ct. Memo LEXIS 184; 37 T.C.M. (CCH) 1361; T.C.M. (RIA) 78329; August 21, 1978, Filed Robert M. Tyle, for the petitioners. George W. Connelly, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code *185 [1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined a deficiency of $ 1,117.79 in petitioners' 1972 federal income tax. Concessions having been made, the sole issue remaining for decision is whether petitioners are entitled to a casualty loss deduction under section 165(a) and, if so, in what amount. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their joint 1972 federal income tax return with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided in Corning, New York. Petitioners reside in a home which is situated at the base *186 of a hill. They purchased the home in 1951 for $ 18,000. Since that time, petitioners have added many capital improvements, including a swimming pool, a patio, and a driveway with retaining walls. The pool was installed in 1962. It is 16 feet wide and 32 feet long. Its frame consists of wooden sidewalls, with a coping, and is lined with a plastic liner which is attached to the sidewalls. Petitioners expended in excess of $ 7,000 for these capital improvements. In June, 1972, Hurricane Agnes struck the area in which petitioners live and caused severe flooding and extensive damage. As a result of the flood, the cinder block walls in petitioners' basement cracked and the asphalt tiles on the basement floor were loosened and raised; the plastic pool liner separated from the wooden sidewalls and wrinkled, the wooden sidewalls became warped, and the coping was ruined; a retaining wall in the driveway was washed out of position; and their back yard lawn and garden were destroyed. Petitioners were not compensated by insurance or otherwise for the damage. After the flood, petitioners repaired some of the damage done to their home. They expended approximately $ 150 for a new coping *187 for the pool and spent $ 400 for topsoil, shrubs, and flowers to replace their lawn and garden. They had the driveway retaining wall pushed back into place at a cost of $ 50. They unwrinkled the plastic pool liner and attached it to the wooden sidewalls at no cost. Petitioners did not repair the basement wall or tiles or the pool's wooden sidewalls. These structural deformities remained unrepaired at the time of trial. After the flood, petitioners had their home appraised by a realtor, who determined that it was worth $ 24,000 immediately before the flood. However, there is no evidence in the record of an appraisal of the property's fair market value immediately after the flood. Petitioners determined that they sustained a $ 6,000 loss to their home as a direct result of the flood. They computed this amount on the basis of the actual and estimated costs of restoring the property to its pre-flood condition. On their joint 1972 federal income tax return, petitioners claimed a casualty loss deduction under section 165(a) in the amount of $ 6,284. [3] Respondent disallowed the deduction for lack of substantiation. *188 OPINION Section 165(a) permits individuals to deduct losses suffered upon the damage to or destruction of nonbusiness property by reason of fire, storm, or other casualty to the extent that the loss from each casualty exceeds $ 100 and is not compensated for by insurance or otherwise. See sec. 165(c)(3). The proper measure of the loss sustained is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not to exceed its adjusted basis. See Helvering v. Owens,305 U.S. 468 (1939); Millsap v. Commissioner,46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs.
Physical damage to property caused by a flood is clearly a casualty within the purview of section 165(c)(3), and respondent apparently concedes that petitioners suffered some such damage. The questions to be resolved, then, are: *189 (a) the amount, if any, of the actual loss sustained and (b) the adjusted basis of the property in petitioners' hands. The burden of proving these amounts rests with petitioners. Pfalzfraf v. Commissioner,67 T.C. 784, 787 (1977); Axelrod v. Commissioner,56 T.C. 248, 256 (1971). Mr. Jones testified that petitioners purchased their home in 1951 for $ 18,000 and that they added a number of capital improvements, the cost of which was in excess of $ 7,000. His testimony is sufficient to establish the adjusted basis of their property in excess of the amount of the loss claimed.See Clapp v. Commissioner,36 T.C. 905 (1961), affd. 321 F.2d 12 (9th Cir. 1963); Citrus Soap Co. of California v. Lucas,42 F.2d 372 (9th Cir. 1930), revg. and remanding 14 B.T.A. 1155 (1929). To establish the amount of the casualty loss, the fair market value of the property immediately before and immediately after the casualty "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. *190 Petitioners cannot meet this requirement. Petitioners had their property appraised by a realtor who determined that its fair market value immediately before the casualty was $ 24,000. But, there is no evidence in the record relating to the fair market value of petitioners' home immediately after the casualty. We do not know whether the realtor made such a determination and, if he did, what he determined that fair market value to be. Furthermore, the realtor did not testify at trial and, as a result, his qualifications as an appraiser have not been established. We do not know what method he utilized to compute the property's fair market value and he was not subject to cross-examination by respondent. Additionally, Mr. Jones, who testified on behalf of petitioners, had no independent opinion as to the pre- and post-casualty fair market values of his land. [4] He merely testified that the loss they incurred to their home as a result of the flood was determined on the basis of what it would probably cost to repair the damage. *191 The cost of repairs to damaged property is acceptable as evidence of the loss of value if: (1) The repairs are necessary to restore the property to its condition immediately before the casualty, (2) the amount spent for such repairs is not excessive, (3) the repairs do not care for more than the damage suffered, and (4) the value of the property after the repairs does not as a result of the repairs exceed its value immediately before the casualty. Chichester v. United States,185 Ct. Cl. 591 (1968); sec. 1.165-7(a)(2)(ii), Income Tax Regs.; see, e.g., Turecamo v. Commissioner,64 T.C. 720 (1975), affd. 554 F.2d 564 (2d Cir. 1977); Squirt Co. v. Commissioner,423 F.2d 710 (9th Cir. 1970), affirming per curiam 51 T.C. 543 (1969); Keith v. Commissioner,52 T.C. 41 (1969). However, the cost of repairs method of valuing a casualty loss applies only to repairs and expenditures actually made. Lamphere v. Commissioner,70 T.C. 391 (1978); Farber v. Commissioner,57 T.C. 714, 719 (1972). *192 Consequently, we must reject as unpersuasive petitioners' attempt to establish the amount of the loss using estimated cost of repairs. Petitioners actually expended $ 150 to repair the coping around their pool, $ 400 to replace their lawn and garden, and $ 50 to straighten the retaining wall in the driveway. Accordingly, we find, and therefore hold, that petitioners incurred a casualty loss to their home as a direct result of the flood in the amount of $ 600. Coupled with the loss to the frozen food and meat, which has been allowed by respondent, and after application of the $ 100 floor pursuant to section 165(c)(3), petitioners are entitled to a casualty loss deduction for the 1972 tax year in the amount of $ 884. * * *
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Included in this amount is $ 384 for the loss of frozen food and meat, which respondent concedes petitioners are entitled to deduct. This loss was also sustained as a direct result of the flood. In addition, petitioners reduced the total amount of their claimed casualty loss arising from the flood by $ 100, as required by sec. 165(c)(3)↩.
4. As a general rule, the opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land,534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards,370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States,156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner,13 T.C. 373↩ (1949); 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.).