CITRUS SOAP CO. OF CALIFORNIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13249. Promulgated January 10, 1929.

*Henry J. Bischoff, Esq.*, for the petitioner.
*Irwin R. Blaisdell, Esq.*, for the respondent.

1158

## OPINION.

MARQUETTE: The issues raised by the pleadings in this case are: (1) What amount is the petitioner entitled to include in its invested capital for the years 1920 and 1921 on account of the assets acquired by it from the Old Corporation? (2) What amount is it entitled to include in invested capital on account of the seven promissory notes received from Stephens & Co. in payment for its preferred stock? (3) Whether the petitioner is entitled to additional depreciation for the year 1921 on its newly constructed factory. (4) Whether it is entitled to a further deduction from gross income for 1920 on account of the loss on the sale of its old factory building, machinery and equipment.

It is the contention of the petitioner that in exchange for its common stock it acquired from the Old Corporation assets of the value of $397,100, including good will; that the notes of Stephens & Co. were bona fide paid in for shares of the petitioner's preferred stock and were of the value of $350,000, which should be included in invested capital; that it is entitled to depreciation on its newly constructed factory and equipment for 1921, computed at the rate of 4.269 per cent, and that it is entitled to a further deduction of $11,718.02 as a loss sustained on the sale of its old factory building.

The respondent contends that more than 50 per cent of the ownership or control of the petitioner remained in the same interests that owned or controlled the Old Corporation, and that under section 331 of the Revenue Act of 1918, and section 331 of the Revenue Act of 1921, the petitioner is not entitled to include in its invested capital the assets acquired from the Old Corporation at more than their cost to that company; that the notes of Stephens & Co. were not bona fide

paid in for stock of the petitioner, and that only the amounts actually paid on such notes in 1920 and 1921 should be included in invested capital for those years, and that the petitioner is not entitled to any greater allowance for depreciation on its new factory building or a greater loss on the sale of its old factory, than has heretofore been allowed.

The first two issues are so closely related that they will be discussed together.

We are of opinion that the restrictions on invested capital imposed by section 331 of the Revenue Acts of 1918 and 1921 do not apply to the transaction under consideration. The evidence shows that on June 1, 1920, the petitioner issued to Stephens & Co. certificates for 4,000 shares of its capital stock, and on the same day it issued 3,971 shares of its capital stock for the assets of the Old Corporation, and that the shares issued to the Old Corporation were promptly distributed among the stockholders of that company. The proportions of the stock so issued then stood:

| | Per cent |
|---|---|
| To Stephens & Co | 50. 2 |
| To the Franck family | 49. 8 |

But the respondent urges that the issue to Stephens & Co. was not a bona fide sale because that stock was later sold to various customers of Stephens & Co., and that while it was in form a sale it was in reality merely a contract under which Stephens & Co. undertook, for a commission, to sell the stock for the petitioner. We do not so regard it. The 4,000 shares of preferred stock were issued to Stephens & Co., who became the owners, entitled to vote it at stockholders' meetings and to the dividends which it earned. It is true that the certificates were endorsed in blank and placed with the petitioner as collateral security for the payment of the purchase money notes given by Stephens & Co., but this did not divest Stephens & Co. of its rights as a stockholder either as to voting or as to dividends. Stephens & Co. purchased the stock in question from the petitioner with the approval of the Commissioner of Corporations of the State of California, and it paid for the stock with notes. Stephens & Co. was a responsible, solvent concern, and the notes had a fair market value of $350,000 and were enforceable to that extent. We do not attach any importance to the fact that the last note and the stock for which it was given were canceled. That was done because at that time the petitioner no longer needed additional funds, and the cancellation of the note and the stock amounted in fact to a retirement of the stock. When the 4,000 shares of preferred stock and 3,971 shares of common stock were issued by the petitioner as described in the findings of fact, the legal ownership of more than 50 per cent, and

with it the control of the company, was in the hands of others than those who owned and controlled the Old Corporation. The petitioner is entitled to include the notes of Stephens & Co. in its invested capital at the amount of $350,000, and it is not restricted, in determining the amount at which the assets acquired from the Old Corporation may be included in invested capital, to the value at which they could have been included in the invested capital of that company.

The petitioner acquired all the property of the Old Corporation, and since section 331 of the Revenue Acts of 1918 and 1921 does not apply here, it may, under section 326 (a) (2) and (5) of the Revenue Acts of 1918 and 1921, include in its invested capital the actual cash value of such property, subject to certain limitations on intangibles, provided such value is capable of ascertainment. As to this issue, however, the petitioner has failed to produce any evidence that would warrant us in disturbing the determination of values made by the respondent.

We have before us evidence as to the amounts at which the tangible assets were carried on the books of the Old Corporation and the earnings of that company over a period of years. There is also evidence that an appraisal was made of these assets about 1920, which appraisal is not before us. The book entries of the Old Corporation are not sufficient to prove that the values they purport to give the assets in question are correct, and they are not supported by other evidence. On this issue we must decline to disturb the determination of the respondent.

We are of opinion that the petitioner's new factory building had a useful life of 25 years and that it should be allowed depreciation thereon computed at the rate of 4 per cent at a cost of $138,583.31.

For the reasons heretofore stated we are unable to determine the cost to the petitioner of the old factory building and we can not, therefore, disturb the respondent's determination as to the amount of the loss sustained in 1920 on the sale thereof.

At the hearing it was stipulated that the reserve for taxes which the respondent eliminated from the petitioner's invested capital for 1920 consisted of certain taxes of the Old Corporation, the payment of which the petitioner assumed; that an equal amount of cash was turned over to the petitioner for that purpose, and that the respondent erred in eliminating the reserve from invested capital.

*Judgment will be entered under Rule 50.*