Austin CLAPP, Gloria Clapp, Stuart
P. Clapp, and Virginia M. Clapp,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 17986.

United States Court of Appeals
Ninth Circuit.

June 25, 1963.

Austin Clapp, Woodside, Cal., for peti-
tioners.

Louis F. Oberdorfer, Asst. Atty. Gen.,
Lee A. Jackson, David O. Walter, and
Ralph A. Muoio, Attys., Dept. of Justice,
Tax Division, Washington, D. C., for re-
spondents.

Before POPE, HAMLEY and
BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

This matter is before us on a petition to
review a decision of the Tax Court re-
determining petitioners' asserted federal
income tax deficiency for the year 1955.
The Tax Court decision is reported in 36
T.C. 905.

Petitioners operated a recreation park
with facilities for swimming, boating
and picnicking.[1] Members of the public
were permitted to utilize these facilities
upon the payment of a fee for admission
to the park.

Included within the boundaries of the
park was a lakeshore. In its natural
state, the lakeshore did not contain any
sand. In order to make an attractive
beach for swimming and sunbathing pur-
poses, petitioners' predecessor as oper-
ator of the park had purchased large
quantities of sand and had spread it over
a part of the shore area.

An unprecedented amount of rain fell
during the month of December, 1955, and
washed approximately ninety-eight per-
cent of the sand into the lake. Petition-
ers claimed the loss as a deduction from
gross income, pursuant to section 165(a)
(b) and (c) (1) of the Internal Revenue
Code of 1954.[2]

---

1. Petitioners Austin Clapp and Stuart P.
Clapp operated the park as partners.
Petitioners Gloria Clapp and Virginia M.
Clapp are the wives of Austin Clapp
and Stuart P. Clapp, respectively.

2. Internal Revenue Code of 1954:
"§ 165. Losses
"(a) General rule.—There shall be
allowed as a deduction any loss sus-

tained during the taxable year and not
compensated for by insurance or other-
wise.

"(b) Amount of deduction.—For pur-
poses of subsection (a), the basis for
determining the amount of the deduc-
tion for any loss shall be the adjusted
basis provided in section 1011 for de-

■ The Commissioner disallowed the claimed loss and assessed a tax deficiency for the year in which it had been claimed.[3] The petitioners asked the Tax Court to make a redetermination of the asserted deficiency. The Tax Court allowed a loss of eight hundred dollars as a deduction. Petitioners contend that the finding that the amount of the loss was only eight hundred dollars is clearly erroneous.

Petitioners presented evidence that they had purchased the park business from one Brandsten on January 3, 1955 for a price of thirty thousand dollars. Brandsten testified that in arriving at his sale price, he had attributed a value of four thousand dollars to the sand on the beach. He had reached the four thousand dollar figure, he testified, by multiplying the surface area covered with sand by the average depth of the sand, and by multiplying the product, two thousand cubic yards, by a per-yard figure of two dollars. Brandsten gave further testimony, based on his experience as operator of the park for a number of years, that during a normal year, from twenty to twenty-five percent of the sand on the beach would be lost through the effects of wind and rainfall.

On the basis of Brandsten's testimony, petitioners argue that they have established a loss in the amount of at least $3,200. This figure, they state, takes into account what would be the normal annual attrition of twenty percent of their sand, which had an established value of four thousand dollars.[4]

The Tax Court chose to rely upon other evidence. On cross-examination, petitioner Stuart P. Clapp testified that in 1956 steps were taken to "replace" the sand and that approximately $1,065 was expended for this purpose. For this figure, he testified, "around 220 yards of sand" had been "spread out around the beach." Relying upon this replacement cost as evidence of the value of the sand which had been lost, the court took account of the normal attrition rate of twenty to twenty-five percent and allowed the petitioners an eight hundred dollar loss.

We cannot say that the Tax Court's determination is clearly erroneous. It was entitled to find that the actual amount of sand which was apparently considered sufficient to put the beach back into operating condition in 1956 (220 yards) was a more reliable gauge of the amount of sand lost, than a figure based on Brandsten's estimate of the amount of sand on the beach (two thousand yards) at the time of the sale. Once having accepted the 220 cubic yard figure as the amount of sand lost, the dollar loss is supported by Stuart P. Clapp's testimony as to the cost of placing the 220 yards, and attributes a cubic yard value to the sand far in excess of the two dollar per cubic yard figure adopted by Brandsten.

■ Petitioners contend that they had a right to a deduction for the market value of the sand lost; not for the cost of its replacement. The court, however, did not purport to allow the deduction as one for the cost of replacement. It looked to the cost of replacement as evidence of market value before loss. This method of ascertaining the amount of the loss is sanctioned by Treasury Regulation 1.165–7(a) (2) (ii), and the court did not err in employing it here. Subsection (a) (2) (i) of the same Treasury Regulation provides that "the fair mar-

---

termining the loss from the sale or other disposition of property.

"(c) Limitation on losses of individuals.—In the case of an individual, the deduction under subsection (a) shall be limited to—

"(1) losses incurred in a trade or business."

3. A part of the controversy before the Tax Court involved the question of when the loss, if deductible, should have been taken. That part of the Tax Court's decision has not been appealed and is not before us.

4. Petitioners would use only a twenty per cent attrition rate in determining their loss because of an unusually small amount of rainfall in 1955 prior to the month of December.

ket value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal. \* \* \*" But, for the reasons which we have already stated, the court could well have determined that the appraisal offered was not competent and that replacement cost was the most reliable evidence.

There was not, as petitioners point out, any direct evidence that the exact amount of sand lost was replaced for the cost of $1,065.00. But neither was there any evidence that the replacement differed in either quantity or quality from the sand that was lost and replaced. In the absence of such evidence, the court could assume that the replacement was adequate.

Petitioners contend that the Commissioner had the burden of proving that the replacement was equal in value to what it replaced. Relying upon Cohen v. C. I. R., 9 Cir., 266 F.2d 5, they argue that since the Commissioner originally took the position that they were not entitled to any deduction for a loss, and since the Tax Court determined that they were entitled to such a deduction, the burden of proving its amount shifted to the Commissioner and in the absence of such proof by the Commissioner, no deficiency could be sustained.

At issue in Cohen was the amount of the taxpayer's gross income; not whether he was entitled to a deduction from it. In such a situation, the court held in Cohen, the taxpayer needs only to put in such proof as will rebut the presumption of validity which attaches to the Commissioner's determination of gross income. He cannot be made, on penalty of paying a tax on it, to affirmatively prove that his gross income was not a stated amount.

These principles are inapposite where the taxpayer claims a deduction from gross income. The burden of proving a deductible loss and its amount is always upon the taxpayer. Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991. To require that the taxpayer sustain the burden of proving the fact of loss and its amount is not to require him to prove a negative, as would have been the case in Cohen.

The decision of the Tax Court is affirmed.