CLAIRE E. AND LULA L. LAMPHERE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1895–76.     Filed May 31, 1978.

*Robert M. Tyle*, for the petitioners.
*George W. Connelly, Jr.*, for the respondent.

DAWSON, *Judge:* This case was assigned to and heard by

Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

FALK, *Special Trial Judge:* Respondent determined deficiencies of $49.74 and $701.29 in petitioners' Federal income taxes for 1970 and 1972, respectively. Concessions having been made by both parties, the only issues for decision are: (1) Whether, for 1970, petitioners are entitled to a deduction for charitable contributions under section 170 in excess of the amount allowed by respondent, and (2) whether, for 1972, petitioners are entitled to a casualty loss deduction under section 165(a) and, if so, in what amount.

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

Petitioners filed their 1970 and 1972 joint Federal income tax returns with the Office of Internal Revenue at Buffalo, N. Y. At the time the petition herein was filed, they resided in Woodhull, N. Y.

During 1970, petitioners attended church on a regular basis. They normally attended Woodhull Methodist Church. Petitioners were frequently ill during 1970 and, at different times during the year, each was hospitalized. Mrs. Lamphere attended other churches when her husband was in the hospital, but Mr. Lamphere did not attend church while his wife was hospitalized.

Petitioners made cash contributions to the churches which they attended. They did maintain some records, but they were unable to locate them at the time of trial. In addition to donating money to the churches, petitioners gave cash to various civic and charitable organizations which solicited donations door-to-door. They did not obtain any receipts for those contributions because

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure, the post-trial procedures set forth in that rule are not applicable to this case.

they were unaware of the need to substantiate their charitable expenditures for income tax purposes with receipts.

On their joint 1970 Federal income tax return, petitioners claimed a charitable contribution deduction under section 170 in the amount of $186.50. Respondent determined that petitioners failed to substantiate any of their charitable contributions, but allowed a deduction of $78 pursuant to audit guidelines.

Petitioners reside in a home which is situated on a slope near a main highway. They purchased the home in 1963 for $7,875 and made many improvements to make it habitable. They installed an electrical system, a septic system, and drilled a water well at costs of approximately $100, $300, and $685, respectively. They also built a garage and a driveway with retaining walls at costs of about $1,500 and $250, respectively.

In June 1972, hurricane Agnes struck the area and caused severe flooding and extensive damage. As a result of the floods, the concrete floor in petitioners' garage was damaged and its back wall collapsed; one of the retaining walls along the driveway was washed out; the electrical system and the septic system were ruined; and some trees and shrubs were destroyed. In addition, the floods caused an overflow from an open garbage dump located about a quarter mile uphill from petitioners' home and refuse was carried down the slope and onto petitioners' property. A substantial amount of refuse was washed into petitioners' well, contaminating their water supply. Consequently, they procured water in milk cans delivered by a neighbor.

Petitioners commenced work immediately after the flood to repair the damage done to their home. They expended approximately $400 for perforated pipe to replace the septic system and spent another $400 for materials to repair the well. The septic system was completely repaired sometime in 1976. The well, however, caused considerable problems. Petitioners realized that they probably had to drill a new well, but they were unable to afford the $1,500 which they estimated it would cost. They based this estimate on the price their neighbors were paying for drilling new wells. At the time of trial, the well water was still not potable. Lastly, petitioners replaced the electrical system in their home at a cost of $265. They were not compensated by insurance or otherwise for the damage.

On their joint 1972 Federal income tax return, petitioners claimed a casualty loss deduction under section 165(a) in the

amount of $3,900. They computed the deduction by reducing the claimed fair market value of their home immediately before the casualty ($16,000) by (1) the claimed fair market value of their home immediately after the casualty ($12,000) and (2) the $100 floor pursuant to section 165(c)(3). Respondent disallowed the deduction in its entirety for lack of substantiation.

OPINION

The issues here are essentially factual. Petitioners, of course, have the burden of proving that respondent's determinations are erroneous. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.

*Issue 1. Charitable Contribution Deduction for 1970*

The only evidence which petitioners offered to substantiate their charitable contributions deduction for 1970 was Mrs. Lamphere's oral testimony under oath.[3] They submitted no documentary or corroborating evidence whatever.

We found Mrs. Lamphere's testimony to be candid, forthright, and credible. Nonetheless, in respect of this issue, her testimony was nonspecific and based on vague recollections (which is certainly understandable in light of the fact that 7 years have elapsed since the tax year in question). Being convinced that petitioners did make qualifying charitable contributions during 1970, we are required to make an approximation of the amount thereof in accordance with our best judgment. *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930); see *Mennuto v. Commissioner*, 56 T.C. 910, 923–924 (1971). On the whole, we believe and therefore hold that petitioners are entitled to a charitable contribution deduction in the amount of $100 for 1970.

*Issue 2. Casualty Loss Deduction for 1972*

Section 165(a) permits individuals to deduct losses suffered on the damage to or destruction of nonbusiness property by reason of fire, storm, or other casualty to the extent that the loss from each casualty exceeds $100 and is not compensated for by

---

[3]Petitioners' 1970 tax return was an exhibit attached to the parties' stipulation, but the return is merely a statement of the petitioner's claim and does not establish the facts contained therein. *Roberts v. Commissioner*, 62 T.C. 834, 837 (1974); *Seaboard Commercial Corp. v. Commissioner*, 28 T.C. 1034, 1051 (1957).

insurance or otherwise. The proper measure of the loss sustained has generally been said to be the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. See *Helvering v. Owens,* 305 U.S. 468 (1939); *Millsap v. Commissioner,* 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165–7(b)(1), Income Tax Regs.

Physical damage to property caused by a flood is clearly a casualty within the purview of section 165(c)(3), and respondent apparently concedes that petitioners suffered some such damage. The questions to be resolved, then, are: (a) the amount, if any, of the actual loss sustained and (b) the adjusted basis of the property in petitioners' hands.

Mrs. Lamphere testified that petitioners purchased their home in 1963 for $7,875, that they added a number of improvements to make it habitable, and to the approximate cost of those improvements. Her testimony is sufficient to establish petitioners' adjusted basis for the property in excess of the amount of the loss claimed on their 1972 tax return. See *Clapp v. Commissioner,* 36 T.C. 905 (1961), affd. 321 F.2d 12 (9th Cir. 1963); *Citrus Soap Co. of California v. Lucas,* 42 F.2d 372 (9th Cir. 1930), revg. and remanding 14 B.T.A. 1155 (1929).

To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal," sec. 1.165–7(a)(2)(i), Income Tax Regs. Petitioners cannot meet that requirement. Mrs. Lamphere testified as to her appraisal of the fair market value immediately after the flood, but there is no appraisal in evidence relating to its fair market value immediately before the flood. Mrs. Lamphere was unable to explain how the pre- and post-casualty fair market values set forth on the Form 4684 made part of petitioners' 1972 return were determined, and Mr. Lamphere was unable to appear as a witness because he was incapacitated.

Section 1.165–7(a)(2)(ii), Income Tax Regs., provides, nevertheless, that the cost of repairs to the damaged property is acceptable as evidence of the loss of value if: (1) The repairs are necessary to restore the property to its condition immediately before the casualty; (2) *the amount spent* for such repairs is not excessive; (3) the repairs do not care for more than the damage suffered; and (4) the value of the property after the repairs does

not as a result of the repairs exceed its value immediately before the casualty. *Chichester v. United States,* 185 Ct. Cl. 591 (1968); see, e.g., *Turecamo v. Commissioner,* 64 T.C. 720 (1975), affd. 554 F.2d 564 (2d Cir. 1977); *Squirt Co. v. Commissioner,* 423 F.2d 710 (9th Cir. 1970), affg. per curiam 51 T.C. 543 (1969); *Keith v. Commissioner,* 52 T.C. 41 (1969).

Mrs. Lamphere testified as to the actual and estimated costs of repairs to the property. The amounts spent for repairs to the septic system ($400), the well ($400), and the electrical system ($265) are acceptable as evidence of the loss of value. Therefore, the total amount of $1,065 is allowable under the regulations.

We turn next to the question of whether the estimated cost ($1,500) for drilling a new well is also allowable as part of the casualty loss. In cases where we have permitted the "cost of repairs" method to be used to ascertain the amount of a casualty loss, the repairs and expenditures were actually made. Cf. *Harmon v. Commissioner,* 13 T.C. 373, 382–383 (1949); *Clapp v. Commissioner,* 36 T.C. 905, 908 (1961), affd. 321 F.2d 12 (9th Cir. 1963). In *Farber v. Commissioner,* 57 T.C. 714, 719 (1972), we specifically rejected the use of estimates as not being "persuasive." It was held that the regulation "contemplates actual repairs and expenditures." We think the regulation provides simplicity and ease of administration. It guards against possible abuse that would result from the use of flexible or inflated estimates of repairs, particularly in situations where the repairs are never made. Consequently, we conclude that the estimated cost of drilling a new well is not allowable as part of the loss of value under the "cost of repairs" method.

Accordingly, we find that petitioners incurred a loss of $1,065 as a direct result of the flood and hold that they are entitled to a deduction, after application of the $100 floor pursuant to section 165(c)(3), in the amount of $965 for the year 1972.

*Decision will be entered under Rule 155.*