JOSEPH L. MAYO AND FRANCES C. MAYO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mayo v. Commissioner
Docket No. 9987-77.
United States Tax Court
T.C. Memo 1978-424; 1978 Tax Ct. Memo LEXIS 90; 37 T.C.M. (CCH) 1756; T.C.M. (RIA) 78424; October 23, 1978, Filed David R. Mayo, for the petitioners. John P. Graham, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $ 877.09 in petitioners' Federal income tax for the year 1975. At issue is the amount of the casualty loss deduction allowable to petitioners under section 165(a), Internal Revenue Code, [1] for damage to their home resulting from burst water pipes. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are so found. Joseph L. Mayo and Frances C. Mayo (petitioners) *91 are husband and wife who resided in South Euclid, Ohio, when they filed their petition in this case. They filed a timely joint Federal income tax return for the year 1975. On October 3, 1974, water pipes burst in an upstairs bathroom of petitioners' residence at 4476 Birchwold Road, South Euclid, Ohio, causing damage to the interior of the residence. The property had been purchased by petitioners in 1963 for about $ 31,000 including land and residence. The residence was built in 1955 or 1956. As a result of the leaking water from the burst pipes, the following areas of the residence suffered damage: an upstairs bathroom, the ground level bathroom, kitchen, den, and the stairways leading to the upstairs bedrooms and to the basement. The leaking water also damaged the carpeting which was about five years old when petitioners purchased it with their home. On October 21, 1974, a detailed estimate for cost of repairs for the water damage to the residence was reduced to writing by American Insurance Repair, Inc., General Contractors, 3804 Payne Avenue, Cleveland, Ohio. Mr. Ray G. Starke, vice president of American Insurance Repair, Inc., made the estimate after an inspection *92 of the residence a few days before October 21, 1974. Mr. Starke has been in the construction business for 12 years and employed by American Insurance Repairs for the past 10 years. Mr. Starke's estimate of the water damage to the residence was as follows: Kitchen 9 feet X 21 feet X 8 feet
Plaster ceiling and
repair walls
34 yards
$ 8.50
$ 289.00
Remove sanitas 2/3
wall and prepare
320 feet
.25
80.00
Sanitas 2/3 wall
320 feet
.75
240.00
Refinish cabinets
125 yards
1.90
237.50
Refinish woodwork
35 yards
1.80
63.00
Replace ceiling
fixture
25.00
Remove and reset
chandelier to
affect repairs
10.00
Remove linoleum and
prepare
189 feet
.25
47.25
Replace linoleum
complete
189 feet
1.25
236.25
Base complete
60 feet
1.00
60.00
Refinish paneling -
lower walls
10 yards
1.80
18.00
Paint ceiling
21 yards
1.80
37.80
Repair plyscore
flooring
50.00
Hall and Stair 3 feet X 18 feet X 8 feet
Remove linoleum
landing and 11
steps
108 feet
.25
27.00
Replace linoleum
landing and 11
steps
108 feet
1.25
135.00
11 pieces bullnose
4.50
49.50
Remove and replace
carpet strip to
affect repairs
5.00
Finish woodwork
15 yards
1.80
27.00
Hall 3 feet x 5 feet x 8 feet
Remove sanitas walls
and prepare
128 feet
.25
32.00
Sanitas walls
128 feet
.75
96.00
Paint ceiling
8.00
Finish woodwork
20 yards
1.80
36.00
Remove linoleum
and prepare
15 feet
.25
3.75
Replace linoleum
15 feet
1.25
18.75
Base complete
16 feet
1.00
16.00
Lavatory 3 feet x 5 feet x 8 feet
Remove sanitas
and prepare walls
128 feet
.25
32.00
Sanitas walls
128 feet
.75
96.00
Paint ceiling
8.00
Finish woodwork
10 yards
1.80
18.00
Remove linoleum and
prepare
15 feet
.25
3.75
Replace linoleum
15 feet
1.25
18.75
Base complete
16 feet
1.00
16.00
Replace carpeting
71 yards
16.00
1,136.00
Total Job Estimate
$ 3,176.30
*93 Later Mr. Starke submitted another estimate to the petitioners at their request at a substantially higher cost which included kitchen remodeling in addition to the repairs for actual damage. In connection with his subsequent estimate, Mr. Starke visited the residence twice within the month following October. The remodeling work sought by petitioners included extensive cabinet and formica work in the kitchen. Mr. Starke was unable to reach any agreement with the petitioners for the additional improvements sought by them for their kitchen and, consequently, did not do either the repairs originally contemplated or the additional improvements. On October 3, 1974, petitioners' residence was insured by the Shelby Mutual Insurance Company, Cleveland, Ohio. On January 3, 1975, the petitioners executed a proof of loss in settlement of their water damage claim with the Shelby Mutual Insurance Company in an amount of $ 2,146.80, which sum was remitted to them. Paul Reischman, an experienced insurance adjuster for Shelby Mutual Insurance Company, handled petitioners' insurance claim for water damages. He personally inspected the damage within a few days after the loss. Ultimately, *94 he had available a copy of Mr. Starke's estimate dated October 21, 1974. The amount of the damage was the subject of extended negotiation between Mr. Reischman and the petitioners. The difference of opinion between them pertained to the carpeting. The useful life of carpeting such as the petitioners had would be approximately 15 years. Petitioners had repairs and renovations made to their residence by various companies and artisans in 1975 at a total cost of approximately $ 6,116.19. The cost included extensive remodeling in the kitchen and new carpeting. On their Federal income tax return for 1975 the petitioners claimed a casualty loss of $ 4,195.23. In his notice of deficiency respondent determined an allowable casualty loss of $ 1,065.20 as follows: (a) In your income tax return for the year 1975 you claimed a casualty loss of $ 4,195.23. It has been determined that the allowable casualty loss for the year 1975 is $ 1,065.20 because you have not established that any greater amount is allowable. Computation of the allowable casualty loss and adjustment is as follows: Casualty loss to residence: Decrease in fair market value
$ 3,176.00
Less insurance recovery
2,146.80
Casualty loss - residence
$ 1,029.20
Casualty loss - Automobile $ 236.00
Less insurance recovery
0
Casualty loss - automobile
236.00
Total casualty loss
$ 1,265.20
Less limitation (2 x $ 100.00)
200.00
Allowable casualty loss
$ 1,065.20
Casualty loss disclosed on return
4,195.23
Adjustment
$ 3,130.03
*95 Petitioners incurred and paid costs of allowable repairs necessitated by the water damage to their home in the total amount of $ 4,200 before the insurance recovery of $ 2,146.80. Amounts incurred and paid for remodeling and renovation are not allowable. OPINION The narrow issue in this case concerns the amount of the casualty loss sustained from the water damage to petitioners' residence. Respondent's position is that Mr. Starke's estimate of October 21, 1974, is the best evidence of the actual loss sustained by petitioners from the water damage. Petitioners contend that respondent's method of valuation is erroneous and that the cost of repairs method of valuation used by them was correct. Alternatively, petitioners argue that they are entitled to use the decrease in fair market value method of valuation of the property. In determining the amount of the loss deductible under section 165, two methods of valuation are acceptable: (1) the decrease in fair market value as a result of the casualty and (2) the cost of repairs. Section 1.165-7 (a)(2)(ii), Income Tax Regs., provides that the cost of repairs to the damaged property is acceptable as evidence of the loss of value *96 if (1) the repairs are necessary to restore the property to its condition immediately before the casualty, (2) the amount spent for such repairs is not excessive, (3) the repairs do not care for more than the damage suffered, and (4) the value of the property after the repairs does not as a result of the repairs exceed its value immediately before the casualty. See Lamphere v. Commissioner,70 T.C. 391, 396 (1978), and cases cited therein. The regulation contemplates actual repairs, and does not include costs of remodeling and renovation. It is obvious from an examination of the invoices, receipts and checks received in evidence that there was extensive remodeling of petitioners' kitchen. In addition, there was replacement of old rugs by new ones in parts of the house. The burden of proof with respect to the costs of repairs was on the petitioners and it has not been carried as to the full amount of the loss deduction claimed. The matter is not susceptible of precise determination on this record, but, doing the best we can with the materials before us, we have found that petitioners sustained a casualty loss of $ 4,200, before insurance reimbursement and the *97 $ 100 deductible amount, that was proximately related to the water damage. Cf. Cohan v. Commissioner,39 F. 2d 540, 544 (2d Cir. 1930). [2] To the extent the remodeling and renovation represent increased costs of the house, they are capital items that are not deductible as an element of the claimed casualty loss. Cf. Heyn v. Commissioner,46 T.C. 302, 309 (1966). Petitioners have also failed on this record to prove the fair market value *98 of the property immediately before the casualty and its fair market value immediately thereafter. To establish the amount of the casualty loss by this method, the relevant fair market values should be "ascertained by competent appraisal." Section 1.165-7(a)(2)(i), Income Tax Regs. In our judgment the appraisal testimony by petitioners' expert as to the before and after fair market values of the residence was not competent to measure the actual loss. The appraisals of the witness as of October 3, 1974, were based on what she was told by the petitioner Frances Mayo about the extent of the water damage and the purported cost of repairs. Her bottom line figure from this approach coincided with the same figure ($ 8,000) which Mrs. Mayo originally told her they were claiming as the casualty loss. Furthermore, her appraisals in her adjustments to the values of comparative properties to reach the market value of the petitioners' residence did not consider either age or depreciation of such property or the properties used as comparatives. Consequently, from a market approach her appraisal was without value on its face. We also note that the witness was not even a qualified real estate appraiser *99 as of October 3, 1974. To reflect the conclusions reached herein, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated.↩
2. In a post-trial conference the Court urged the parties to settle the issue. Respondent was willing; petitioners were not.Our observation is that quite often in a dispute of this type the parties have convinced themselves of the unalterable correctness of their positions and have consequently failed successfully to conclude settlement negotiations--a process more conductive to disposition of the dispute. The result is an effort, during the course of ensuing litigation, to "infuse a talismanic precision into an issue which should frankly be recognized as inherently imprecise and capable of resolution only by a Solomon-like pronouncement." Messing v. Commissioner,48 T.C. 502, 512↩ (1967).