DOUGLAS E. BAILEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bailey v. Commissioner
Docket No. 12308-77.
United States Tax Court
T.C. Memo 1980-170; 1980 Tax Ct. Memo LEXIS 416; 40 T.C.M. (CCH) 336; T.C.M. (RIA) 80170; May 12, 1980, Filed *416 Three properties owned by petitioner were damaged by a storm. Estimates of the cost to repair the damage were prepared. Petitioner was compensated by insurance for part of the damage; the insurance adjuster used the repair estimates in determining the insurance recovery. All the damage, except that to one-half of a damaged roof, was repaired. Petitioner did some of the repairs, and paid his son to do some. Petitioner's contracting corporation was paid to do the remaining repairs. Held: amounts of losses in excess of insurance recoveries determined under section 1.165-7(a)(2), Income Tax Regs.
Robert M. Tyle, for the petitioner. Anthony M. Bruce, for the respondent. CHABOT
*417 MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge : Respondent determined a deficiency in Federal individual income tax against petitioner for 1975 in the amount of $2,203.65. After settlement of certain matters, there remaind for determination the amounts, if any, by which losses from storm damage to petitioner's properties exceeded petitioner's insurance recoveries so as to give rise to deductions under section 165. [1]
FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioner resided in Corning, New York. On or about July 3, 1975, a severe rain, wind, and hailstorm caused damage to three properties in Corning owned by petitioner, viz.: his residence, a rental property at 121 East First Street (hereinafter sometimes referred to as "the First Street property"), and a rental property at 175 Steuben Street (hereinafter sometimes referred to as "the Steuben Street property"). *418 Damage to petitioner's residence consisted of a broken thermopane window, damage to aluminum gutters, eaves troughs, conducters, and valleys, damage to or loss of roof shingles, and damage to a redwood fence. Damage to the First Street property consisted of two broken windows, punctured gutters and valleys, and shingle damage to a house and a barn on the property. Damage to the Steuben Street property consisted of broken storm windows and shingle damage. Petitioner was a general contractor in the Corning-Elmira area since about 1964. In 1975 petitioner conducted his general contracting business through his corporation, Douglas Bailey Builder, Inc. (hereinafter referred to as "Builder"). Not long after the storm, petitioner caused Builder to prepare estimates of what it would cost to repair the storm damage to his properties. Builder's estimates reflected an $8.50-per-hour labor charge (the amount charged at that time by Builder to its customers) and set forth the total amounts that would be charged by Builder to a stranger. Builder did not charge its customers with markups based on costs of materials.The estimates were $5,090 for the First Street property, $4,910 for the *419 residence (including an estimate for fence repair of $985 for material and $480 for labor), and $3,100 for the Steuben Street property. In general, about three-sevenths of the estimates represented materials and four-sevenths represented labor. Petitioner placed a claim with his insurance agent, Lloyd D. Sprague and Son (hereinafter referred to as "the Sprague Agency") for the damage. Petitioner submitted to the Sprague Agency copies of the estimates prepared by Builder. The Sprague Agency considered the estimates prepared by Builder to reflect competitive labor prices and total costs, and used the estimates in determining petitioner's insurance recovery. After inspecting the properties and taking into account other factors, the Sprague Agency paid the full amount for each item set forth in the Builder estimates, except as to the following: Residence--allowed nothing for labor in repairing the fence (although it allowed the full estimate for fence materials), allowed only $175 of the $360 estimate for removal of damaged roofing squares, and allowed only $1,600 of the $2,240 estimate for replacement of damaged roofing squares; First Street property--allowed only *420 60 percent of estimates for installing roof shingles on a barn and a house; and Steuben Street property--allowed only 60 percent of estimate for installing roof shingles. These amounts represented the "actual cash value" of the damage, measured by replacement cost less depreciation; they had nothing to do with fair market value. A separate check was issued to petitioner for the amount allowed for each of the three properties. All the damage to petitioner's properties was repaired except for replacement of one-half of the damaged shingles on the roof of the barn on the First Street property. Of the repairs made to the damaged property, Builder did one-half of the repairs to the First Street and Steuben Street properties. Petitioner himself did one-eighth of the repairs to the First Street and Steuben Street properties and one-quarter of the repairs to his residence. Petitioner's son did three-eighths of the repairs to the First Street and Steuben Street properties and three-quarters of the repairs to petitioner's residence; for this work petitioner paid him $3.50 per hour. (In 1975 Builder paid its laborers about $4.50 or $5.00 an hour.) Petitioner did not obtain *421 a real estate appraisal of his properties before or after the storm. Petitioner does not hold a real estate license. Petitioner did not attempt to purchase or sell any properties in the Corning, New York, area immediately after the storm. Petitioner was not aware of any sales of storm-damaged property in that area at that time. Table 1 sets forth, for each of the properties, the amount petitioner claimed as his loss in value (before insurance recovery), the Builder estimate of cost of repairs, and the amount of petitioner's insurance recovery. Table 1
Claimed
Repair
Insurance
Loss
Estimate
Recovery *
Residence
$6,000
$4,910
$3,509
First Street property
6,000
5,090
3,228
Steuben Street property
4,000
3,100
2,048
Petitioner claimed deductions for the amounts by which each of the claimed losses exceeded the corresponding insurance recovery (in the case of the residence, petitioner reduced the "excess" by the $100 "floor" of sec. 165(c)(3)). Respondent disallowed the entire deduction for lack of substantiation. * * *
Petitioner's 1975 casualty loss on the First Street *422 property exceeded his insurance recovery on this property by $400. Petitioner's 1975 casualty loss on the Steuben Street property exceeded his insurance recovery on this property by $400. OPINION The parties agree that (1) three of petitioner's properties were damaged and that the damages arose from "casualties", within the meaning of section 165(c)(3); (2) petitioner's tax basis in each property was not less than petitioner's claimed loss in value for that property.m and (3) petitioner's losses were compensated for by insurance to the extent of the amounts set forth in table 1, supra. Respondent has not asserted that the insurance recovery for any of the losses exceeded that loss. The parties disagree as to whether petitioner has carried his burden of proving that he sustained a loss in excess of his insurance recovery (plus, in the case of his residence, the $100 "floor" of section 165(c)(3)) as to any of the properties. We conclude that petitioner sustained such excess losses of $400 on each of the two rental properties, and that these amounts are deductible in 1975. [2] We conclude petitioner has failed to show he sustained such an excess loss on his residence. *423 Section 165 [3] permits individuals to deduct trade or business losses and nonbusiness casualty losses to the extent not compensated for by insurance or otherwise. The measure of such a loss has generally been said to be the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. See Helvering v. Owens, 305 U.S. 468, 471 (1939); Lamphere v. Commissioner, 70 T.C. 391, 395 (1978); sec. 1.165-7(b)(1), Income Tax Regs.[4]
*424 Petitioner testified to the fair market values as set forth in table 2. Table 2
FMV Before
FMV After
Storm
Storm
Loss
Residence
$60,000
$54,000
$6,000
First Street property
75,000
69,000
6,000
Steuben Street property
35,000
31,000
4,000
The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. Meredith v. Hardy, 554 F.2d 764, 765 (CA5 1977); see Kestenbaum v. Falstaff Brewing Corp., 514 F.2d 690, 698-699 (CA5 1975); see also Soo Line R. Co. v. Fruehauf Corp., 547 F.2d 1365, 1377 (CA8 1977). See Fed. R. Evid. 702; 3 Weinstein's Evidence, par. 702[01], n. 1 (1978 rev.). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Meredith v. Hardy,supra; see Kestenbaum v. Falstaff Brewing Corp.,514 F.2d at 699. See also Kestenbaum v. Falstaff Brewing Corp.,575 F.2d 564, 573-574 (CA5 1978); *425 District of Columbia v. 13 Parcels of Land, Etc.,534 F.2d 337 (CADC 1976). Petitioner had purchased about 15 properties over the years and had sold one. As a general contractor, petitioner had some familiarity with property values. Clearly, petitioner's testimony on this matter is not only admissible but is entitled to some weight. However, petitioner gave no indication as to how he arrived at his specific value estimates. He did not attempt to sell any of his properties immediately after the storm and was not aware of any sales of storm-damaged property. Petitioner did not testify as to comparable sales or even offerings for sale. Petitioner is neither a broker nor an appraiser. Thus unadorned, petitioner's conclusory testimony goes no further than to persuade us of what respondent has not challenged--that petitioner's properties sustained damages that lowered their fair market values by some significant amounts. Petitioner's fair market value testimony is not sufficient to sustain his burden of proving that any of these losses exceeded the corresponding insurance recovery (plus, in the case of his residence, the $100 "floor"). [5]
*426 Respondent's regulations provide an alternate method of determining the amount of a casualty loss. This method treats the cost of repairs as evidence of the amount of casualty loss, if (1) the repairs restore the property to its precasualty condition, but do not improve it, (2) the cost of the repairs is not excessive, (3) only that part of the property damaged by the casualty is repaired, and (4) the value of the property after the repairs is not greater than the value of the property before the casualty. Section 1.165-7(a)(2)(ii), Income Tax Regs.[6]
This rule has *427 been held to apply only where the repairs have in fact been made. Lamphere v. Commissioner,70 T.C. at 396; Farber v. Commissioner,57 T.C. 714, 719 (1972). In the instant case, all of the repairs have been made (except as to one-half of the barn roof on the First Street property) and respondent does not assert that any of the four stated conditions of the regulation has been violated. What remains is to determine what the repairs cost. Petitioner presented evidence as to what it would have cost if Builder, his corporation, had done all three repair jobs. But Builder did only one-half of two of the jobs, nd did nothing on the residence; petitioner and his son provided the remaining labor. Petitioner has provided us with only sketchy information from which to calculate costs. Doing the best we can with the materials before us ( Lamphere v. Commissioner,supra;Heyn v. Commissioner,46 T.C. 302, 310 (1966)), we conclude that petitioner's cost of repairs for each of the two rental properties exceeded the insurance recovery for each of the properties by $400. As a result, we hold that petitioner is entitled *428 to deduct $400 on account of his casualty loss to the First Street property and $400 on account of his casualty loss to the Steuben Street property. Petitioner has failed to carry his burden of showing that his loss on his residence exceeded his insurance recovery on his residence. To take account of our conclusions on the casualty losses and the parties' agreements on other matters, Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable year in issue.↩
*. "Actual cash value" of damage, minus $100 deductible.↩
2. Respondent has not suggested that petitioner's expressed dissatisfaction with the amounts of the insurance recoveries should affect the year in which any excess loss is to be deductible. See Montgomery v. Commissioner, 65 T.C. 511, 517-518 (1975); sec. 1.165-1(d)(2)(i), Income Tax Regs. Nor has either party suggested that the business nature of two of the properties should affect the deduction. See R. R. Hensler, Inc. v. Commissioner, 73 T.C. 168↩ (1979).
3. The relevant portions of section 165 provide as follows: SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * * ↩
4. The manner of determining the amount of a casualty loss appears to be the same, whether or not the loss is business-connected. See sec. 1.165-7(a)(1), Income Tax Regs. Cf. R. R. Hensler, Inc. v. C ommissioner, supra↩.
5. We note that the insurance recoveries on the three properties aggregated $8,785.↩
6. Sec. 1.165-7. Casualty losses. (a) In general--* * * (2) Method of valuation. * * * (ii) The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d↩) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty.