GERTRUDE C. GOROD, ET AL., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gorod v. Commissioner
Docket Nos. 3299-79, 11789-80.[1]
United States Tax Court
T.C. Memo 1981-632; 1981 Tax Ct. Memo LEXIS 110; 42 T.C.M. (CCH) 1569; T.C.M. (RIA) 81632; October 27, 1981. Gertrude C. Gorod, pro se. Gary S. Gross, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT *112 AND OPINION DRENNEN, Judge: These cases were assigned to and heard by Special Trial Judge Marvin F. Peterson pursuant to the provisions of section 7456(c) of the Internal Revenue Code[2] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[3] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined deficiencies of $ 1,756.74 and $ 1,451.00 in petitioner's Federal income taxes for the taxable years 1976 and 1978, respectively. The issues for decision are (1) whether petitioner is entitled to deduct rent expenses and depreciation for the taxable years at issue; (2) whether petitioner is entitled to claimed casualty loss deductions for the taxable years at issue; (3) whether petitioner *113 is entitled to a deduction for property taxes for the taxable year 1976; (4) whether, for the taxable years at issue, petitioner is entitled to deductions for employee business expenses; and (5) whether petitioner is taxable on interest earned on a joint savings account during the taxable year 1978. [4]
FINDINGS OF FACT Petitioner Gertrude C. Gorod (hereinafter petitioner) resided at 371 Bryant Street, Malden, Massachusetts, when she filed her petitions in these cases. Petitioner constructed a duplex apartment building (hereinafter building) in 1968 and occupied the upper unit from 1968 through the taxable years at issue. The building is located in a run-down area of the City of Malden. The lower unit was made available for rental in 1968, and continued to be so held through the taxable years at issue. However, due to the location of the the building petitioner has not been able to rent the lower unit at any time since it was built. No tenants were found even though petitioner repeatedly advertised the unit in the newspaper and posted notices in area supermarkets. Several individuals *114 have responded to the advertisements and notices over the years, but they decided to seek living quarters elsewhere. At no time was the lower unit occupied by petitioner, although she did enter it periodically to make sure the premises were secure and to make repairs. During the taxable years at issue petitioner claimed the following expenses for maintaining and repairing the lower unit: 1976
1978
Utilities
$ 368.02
$ 330.25
Insurance
58.50
89.00
Painting
216.00
217.25
Landscaping
245.00
263.72
Repairs
441.00
93.50
Petitioner determined the amount of the utilities, insurance and landscaping expenses by allocating one-half of the total cost to the lower unit. The painting and repairs expenses represent amounts actually expended by petitioner on the lower unit. The building was constructed at a cost of $ 35,000, exclusive of land, with a useful life of 25 years. One-half of the cost of construction is allocable to the lower unit. Petitioner claimed a depreciation deduction for the lower unit in the amount of $ 1,500 on her 1976 and 1978 Federal income tax returns. The building was subjected to repeated attacks by vandals during *115 1976 and 1978. In 1976, the building was vandalized on seven separate occasions, from July 17 to November 28. The vandals broke several windows, punched holes in the garage door, tore shingles from the roof, pulled down the gutters and damaged the interior walls of the lower unit. After the first few attacks petitioner replaced the broken windows, but when it became apparent that they would only be broken again she boarded the windows up. In 1978 petitioner's building was vandalized on four separate occasions, with much the same damage being done. Petitioner did not keep any receipts or records of amounts expended to repair the damage, but determined the amount of the loss for 1976 by estimating the cost of repairs, and for 1978 by determining the decrease in fair market value of the property. Recognizing the $ 100 per casualty exclusion of section 165(c)(3), petitioner reduced the total amount of the losses by $ 700 for 1976 and $ 400 for 1978. Accordingly, petitioner claimed casualty loss deduction of $ 2,010 and $ 3,212 on her 1976 and 1978 returns, respectively. [5] Petitioner's homeowner's insurance policy did not cover damage caused by vandalism. *116 In 1976 the City of Malden assessed a property tax on the building in the amount of $ 2,770.90. Petitioner claimed an itemized deduction in this amount on her 1976 Federal income tax return. The property tax was payable semiannually, and petitioner made a payment of $ 1,385.45 with a cashier's check in November, 1976. Petitioner also made a $ 1,385.45 payment in May, 1976, although the method of payment is unknown. Petitioner was employed by the State of Massachusetts (hereinafter State) during the taxable years at issue as a disputed claims adjuster for the Division of Employment Security (hereinafter Division). Petitioner's duties consisted chiefly of travel to the local employment service offices located throughout the State to evaluate decisions made by local claims adjudicators. Petitioner owned two automobiles, a 1961 Oldsmobile and a 1956 Plymouth, and she used the Oldsmobile exclusively for job related travel. The main office of the Division is in Boston, which is approximately six miles from petitioner's home in Malden. Petitioner worked in the Boston office 11 times in 1976 and 55 times in 1978. All of petitioner's work assignments and paychecks were mailed to *117 her residence. Petitioner did not have her own desk or telephone at the Boston office of the Division, or at any local office, but a spare desk was usually available for her use when she made her visits. Petitioner drove the Oldsmobile 11,412 miles during 1976 and 15,575 miles during 1978. The State reimbursed petitioner based on the distance between the Division office in Boston and the local office to which petitioner was assigned on the particular day. Petitioner received reimbursement for 9,336 of the miles driven during 1976 at the rate of $ .12 per mile. In 1978, petitioner was reimbursed for 12,783 of the miles driven at the $ .12 per mile rate. The mileage for which petitioner was not reimbursed consists of the distance beteen petitioner's home and the Division office in Boston, and travel between local offices on the same day. Petitioner paid $ 78.75 for parking and tolls during her travel in 1976, and $ 319.90 in 1978, for which she received no reimbursement from the State. Petitioner claimed an employee business expense deduction for 1976 and 1978 for the travel, and the parking and tolls. Petitioner's computation of the automobile expenses by using the "optional" *118 method is not in dispute. Petitioner's job required her to make infrequent overnight trips. During 1976 petitioner traveled away from home overnight for business a total of 13 nights, and in 1978 petitioner spent 12 nights away from home. The State reimbursed petitioner for lodging expenses, but not for meals and cab fare. Petitioner claimed a deduction for the meals and cab fare in the amount of $ 260 for 1976 and $ 140 for 1978 as an employee business expense. Petitioner did not maintain written records or receipts, but estimated this portion of the deduction based on the number of nights she was away from home. Petitioner and her sister opened a joint bank account (hereinafter account) at the Provident Institution (hereinafter bank) some time prior to 1978. Although petitioner deposited some money in the account before 1978, all of this money was withdrawn prior to 1978. Petitioner did not make any deposits or withdrawals during or subsequent to the taxable year 1978. Petitioner received a Form 1099 for the taxable year 1978 indicating the account earned interest of $ 1,854. Petitioner did not include this amount in income on her 1978 return. OPINION The first issue *119 for decision is whether petitioner is entitled to deduct depreciation and repair and maintenance expenses incurred in connection with the lower unit of the building. Respondent contends that the deduction for these expenses should be denied because petitioner's rental activity constitutes an activity not engaged in for profit within the meaning of section 183. In addition, respondent contends that no deductions should be allowed due to the provisions of section 280A, or for lack of substantiation. Section 183(c) defines an activity not engaged in for profit as any "activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Deductions are allowable under section 212 for expenses incurred in connection with activities engaged in for the production or collection of income, or for the management, conservation or maintenance of property held for the production of income. Section 162 allows a deduction for expenses related to activities which constitute a trade or business. The burden of proving that the activity was engaged in for profit rests with the taxpayer. *120 Golanty v. Commissioner, 72 T.C. 411 (1979), affd. in an unpublished opinion 647 F. 2d 170 (9th Cir. 1981). The test is whether the taxpayer engaged in the activity with the primary or dominant motive of making a profit. Dunn v. Commissioner, 70 T.C. 715 (1978), affd. 615 F. 2d 578 (2d Cir. 1980). The taxpayer need not have a reasonable expectation of profit, but he must enter into the activity, and continue the activity with a bona fide intention and objective of making a profit. Sec. 1.183-2(a), Income Tax Regs.; Jasionowski v. Commissioner, 66 T.C. 312 (1976); Benz v. Commissioner, 63 T.C. 375 (1974). As explained by the Senate Finance Committee, in determining whether an activity falls within the purview of section 183, "the focus is to be on whether the activity is engaged in for profit rather than whether it is carried on with a reasonable expectation of profit. This will prevent [section 183] from being applicable to situations where many would consider that it is not reasonable to expect an activity to result in a profit even though the evidence available indicates that the activity *121 is engaged in for profit." S. Rept. 91-552, 91st Cong., 1st Sess. (1969), 1969-3 C.B. 423, 489-490. Respondent contends that petitioner's failure to rent the lower unit establishes that the activity was not engaged in for profit. While the lack of rental income is an indication that the activity is not engaged in for profit, it is just one factor of many that must be considered in resolving this issue. Petitioner's lack of rental income is explained by the fact that the building is located in a high crime, run-down area. Petitioner still advertised the lower unit for rent in the newspapers and in supermarkets, and expected to rent it at some time in the future. Petitioner spent money keeping the lower unit in a habitable condition, and did not use it for her own purposes. In addition, the building was designed and constructed as two separate housing units. All of this leads us to conclude that the lower unit of the building was property held for the production of income, and that the expenses incurred in connection therewith are deductible pursuant to section 212. Respondent also contends that section 280A precludes the deduction of the rental expenses and depreciation, *122 apparently on the theory that petitioner's occupancy of the upper unit constitutes "personal use" of the lower unit. We need not delve into the intricacies of section 280A, however, because we note that the building consisted of two separate and distinct dwelling units, and petitioner only entered the lower unit to make repairs and to check security. Under such circumstances we find section 280A inapplicable. [6]
Respondent further contends that petitioner failed to substantiate the expenses. Petitioner introduced documentary evidence and provided detailed testimony on the various expenses, and we are convinced that petitioner did incur expenses in the amount she claimed. However, some adjustment is necessary to the utilities expense deduction since the unit was unoccupied throughout the years at issue. Using our best judgment, we find that one-fourth of the total utilities expenses (i.e., one-half of the amount petitioner allocated to the rental unit) are allocable to the rental unit. Also, petitioner's depreciation deduction is limited to $ 700 per year (one-half of $ 35,000, the cost of construction, divided by 25 years, the useful *123 life of the rental unit). Next we must consider whether petitioner is entitled to casualty loss deductions claimed for both of the taxable years at issue. We have found as a fact that petitioner's property was subjected to repeated attacks by vandals during 1976 and 1978, and it is well-established that losses from vandalism are deductible casualty losses. [7]Davis v. Commissioner, 34 T.C. 586 (1960). Petitioner determined the loss for 1976 by estimating the cost of repairs. The cost of repairs is an acceptable method for determining the amount of the loss only where the repairs are actually made. Lamphere v. Commissioner, 70 T.C. 391 (1978). This does not mean petitioner is not entitled to a deduction for 1976, however. Petitioner provided this Court with detailed testimony as to the nature of the losses, and under the rule of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we find petitioner is entitled to a casualty loss deduction for 1976, after taking into account the $ 100 per casualty exclusion pursuant to section 165(c)(3), of $ 1,000. [8]
*124 For 1978, petitioner determined the amount of the loss by estimating the diminution in the fair market value of the building. The regulations state that this is an acceptable method of determining the amount of the loss, provided the decrease in fair market value is determined by competent appraisal. See sec. 1.165-7(a)(2)(i), Income Tax Regs. Although petitioner's testimony on this issue is evidence of the amount of the diminution in value, petitioner did not demonstrate that she was a qualified and competent appraiser. Nonetheless, as with the taxable year 1976, we are convinced petitioner suffered deductible casualty losses, and using our best judgment we find petitioner is entitled to a deduction in the amount of $ 2,800, taking into account the $ 100 per casualty exclusion under section 165(c)(3). The next issue is whether petitioner is entitled to a deduction for property taxes for 1976. Respondent disallowed the deduction in its entirety for failure to substantiate. Petitioner bears the burden of proof on this issue. *125 Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner's property taxes are payable semiannually, and on her 1976 return she claimed a deduction in the amount of $ 2,770.90. At trial, petitioner introduced into evidence a cancelled cashier's check in the amount of $ 1,385.45, payable to the City of Malden. In addition, petitioner testified that the other 1976 payment was made. Although petitioner could not recall by what means the other payment was made, her testimony was entirely credible on this issue and we therefore find that petitioner is entitled to a deduction for property taxes in the amount claimed on her return. The next issue is whether petitioner is entitled to a deduction for employee business expenses for the taxable years at issue. Respondent disallowed petitioner's deduction for each year in its entirety. During the years at issue petitioner received her work assignments at home and travelled throughout the State visiting local offices. Generally, petitioner would leave her home in the morning, drive to the designated office, and then drive home in the evening. Occasionally, petitioner *126 would drive to more than one office on the same day. Also, petitioner did on occasion spend the night away from her residence while on business. The State reimbursed petitioner at the rate of $ .12 per mile for both 1976 and 1978. That portion of the travel for which petitioner was reimbursed consists of the round-trip distance between the Division's main office in Boston and the first local office to which petitioner was assigned on any given day. Petitioner was not reimbursed for the excess of the distance from her residence in Malden to the local office over the distance from the Division office in Boston to the local office. Petitioner also received no reimbursement for travel between two local offices on the same day, or for parking and tolls. Petitioner computed the travel expense deduction for the years at issue using the optional method, and claimed all parking and tolls, and mileage on the Oldsmobile, as deductible business expenses. Respondent's main contention is that petitioner failed to substantiate the claimed expenses. Petitioner, however, produced contemporaneous records listing the number of trips to each office, the distance for which she was not reimbursed, *127 and the amount expended for parking and tolls. We have no reason to question petitioner's veracity on this issue, and will therefore proceed to determine whether petitioner properly deducted her travel expenses. Section 162(a) allows a deduction for all the ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business.Commuting expenses, however, are considered to be personal, nondeductible expenses. Section 262. Even though petitioner received her work assignments and paycheck at her residence this does not mean that all business related travel away from her residence constitutes a deductible travel expense.Petitioner contends that her residence was her principal office since all of her work assignments were mailed there and only incidental visits were made to the Division Office in Boston. Accordingly, petitioner maintains all travel from her residence to the local offices constitutes business travel, and is deductible to the extent no reimbursements are received. We disagree. An office in the home is not a principal office unless a substantial part of the taxpayer's business is carried on there. *128 Green v. Commissioner, 59 T.C. 456 (1972). In the instant case petitioner merely received her work assignments in the mail at her residence, and did not carry on any other work related activity there. Most of petitioner's business was done at the local offices and the main Division Office in Boston. Petitioner made 11 trips in 1976 and 55 trips in 1978 to the Division Office in Boston which by far exceeds the number of trips to any other local office. In addition, petitioner's supervisors were in the Boston office and regular meetings were conducted there. Accordingly, we find that petitioner's principal office was in Boston, and the cost of travel between her home and the Boston office represents nondeductible commuting expenses.The cost of traveling from the Boston office to local offices is deductible, however. Green v. Commissioner, supra.
During 1976 petitioner drove 11,412 miles and received reimbursement at the rate of $ .12 per mile for 9,336 miles. After reviewing petitioner's records and testimony, we find that the unreimbursed mileage consists of 1,044 commuting miles and 1,032 miles of travel between offices. In addition, we find *129 petitioner paid $ 78.75 for parking and tolls while on business travel. Based on these findings, we hold petitioner is entitled to a deduction for business travel, computed in accordance with Rev. Proc. 74-23, 1974-2 C.B. 476, of $ 515.07 for the taxable year 1976. During 1978 petitioner drove 15,575 miles and was reimbursed at the rate of $ .12 per mile for 12,783 miles. An examination of the record reveals that the unreimbursed mileage consists of 1,932 commuting miles and 860 miles of travel between offices. Also, petitioner paid $ 319.90 for parking and tolls while travelling between offices. Pursuant to Rev. Proc. 77-40, 1977-2 C.B. 574, we find petitioner is entitled to a $ 1,104.75 deduction for business travel for 1978. Also, petitioner occasionally made overnight trips on behalf of the State during the taxable years at issue. Petitioner was reimbursed for her lodging, but not for her meals and cab fare. In computing her employee business expense deduction, petitioner determined the deduction for meals and cab fare by applying a flat rate to the number of days she was gone. This clearly does not satisfy the stringent substantiation requirements *130 of section 274(d), and accordingly, we find respondent properly disallowed this portion of the deduction. The final issue is whether interest earned on a joint savings account during 1978 is taxable to petitioner. Respondent, having first raised this issue in an amended answer, bears the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure.The account was opened by petitioner and her sister some time before 1978. And, although petitioner did occasionally deposit and withdraw her own funds prior to 1978, from at least 1978 through the time this case came to trial, petitioner made no deposits or withdrawals and had none of her own funds on deposit in the account. Respondent contends that since the bank sent petitioner a Form 1099 indicating that the account earned interest of $ 1,854, petitioner is taxable on this interest. Respondent is in error. Although a Form 1099 was mailed to petitioner, all of the evidence indicates that the funds upon which the interest was earned belonged to petitioner's sister. Further, petitioner's testimony suggests that all control over the account was relinquished prior to 1978. Petitioner also testified that her sister reported *131 the interest as gross income on her 1978 return.Respondent did not refute this testimony. In the light of the foregoing, we find that petitioner is not taxable on the interest income.See Pond v. Commissioner, 12 B.T.A. 865 (1928). [9]
To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for purposes of trial, briefing, and opinion.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
3. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
4. Respondent first raised the issue of unreported interest income in an amended answer.↩
5. In an amended petition, petitioner claims an additional casualty loss deduction of $ 1,959.60 for the taxable year 1976 based on the estimated cost of purchasing 12 pieces of Lexan (a plastic sheeting) to cover and protect the windows.↩
6. See Proposed Reg. 1.280A-1(c)(1).↩
7. Of course, the damage to the lower unit would be deductible without regard to whether vandalism is considered a casualty.See section 165(c)(2). However, petitioner did not adequately distinguish between damage to the lower and upper unit.Accordingly, we will treat all of petitioner's loss from vandalism as arising under section 165(c)(3). ↩
8. See Sylvester v. Commissioner, T.C. Memo. 1978-461. In an amended petition petitioner claimed an additional casualty loss deduction for 1976 in the amount of $ 1,959.60. This amount is based on petitioner's estimated replacement cost of 12 sheets of Lexan plastic to cover broken windows. No credible evidence was introduced to support this deduction, and it was given no weight in our determination of petitioner's 1976 casualty loss deduction.↩
9. See also Chominski v. Commissioner, T.C. Memo. 1971-1↩.