DONALD G. NOVACK AND TRUDI S. NOVACK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Novack v. Commissioner
Docket Nos. 25911-86; 25912-86
United States Tax Court
T.C. Memo 1989-538; 1989 Tax Ct. Memo LEXIS 538; 58 T.C.M. (CCH) 288; T.C.M. (RIA) 89538; September 28, 1989; As corrected October 12, 1989 Jack Elon Hildreth, Jr., for the petitioners. *539 Wendy Harris and Randall G. Durfee, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes, as follows: Additions to Tax
Sec.
Sec.
Sec.
Docket No.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661(a)
25911-86
1982
$ 48,198
$ 2,410
*
$ 4,820
25912-86
1983
54,607
2,730
*
5,461
Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are (1) whether petitioners are entitled to a casualty loss deduction pursuant to section 165 as a result of a flood occurring in February 1983, and (2) whether petitioners are subject to additions to tax as set forth above. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Petitioners Donald G. Novack *540 and Trudi S. Novack were residents of Newport Beach, California, at the time they filed their petitions. During the years in issue, petitioner Donald G. Novack (petitioner) was chairman, president, chief financial officer, and sole shareholder of American Metals Reductions Company, Incorporated (American Metal), a scrap metal and salvage company. During the years in issue, American Metal's business operations were located in San Bernardino County at 2202 South Milliken Avenue, Ontario, California (the Milliken property). Petitioner's father originally owned the Milliken property and operated a scrap metal business thereon. After petitioner's father died, the property and business passed to petitioner's mother, Rebecca Novack. Thereafter, petitioner operated and managed the scrap metal business. Rebecca Novack died on November 17, 1970. Rebecca Novack's will provided, with one minor exception not relevant here, that her entire estate was to be distributed equally to each of her three sons, Robert L. Novack, Richard G. Novack, and petitioner. At the time of Rebecca Novack's death, the Milliken property was valued by an independent inheritance tax appraiser at $ 140,000. *541 Pursuant to an agreement entered into among the three brothers, petitioner acquired sole interest in the Milliken property and the scrap metal business. In exchange for his brothers' interests, petitioner gave a $ 19,000 note to Richard G. Novack and a $ 46,000 note to Robert L. Novack. The notes executed by petitioner represented the approximate difference between petitioner's one-third inheritance and the $ 140,000 value of the Milliken property. Petitioner gave these notes to his brothers to equalize the value of the inherited property received by each brother. On tax returns filed for the years in issue, petitioner allocated $ 35,400 of the $ 140,000 initial tax basis of the inherited property to equipment and improvements. The remaining $ 104,600 of inherited basis was thus allocated to the real property and was not depreciated. By February 1983, petitioner had taken depreciation deductions totaling $ 31,860 against the $ 35,400 allocated to inherited equipment and improvements, leaving a remaining basis of $ 3,540 in improvements and $ 104,600 in land. After he inherited the family business, petitioner continued to purchase and subsequently depreciate new equipment *542 and improvements. Petitioner, however, deducted as expense rather than capitalized numerous improvements to the land and buildings on the Milliken property, including the water, electrical, and railroad systems. During the years in issue, petitioner thus had a zero basis in these previously expensed items. By February 1983, petitioner had an adjusted basis in subsequently purchased assets as follows: Salvage value
$ 18,198.50
Undepreciated cost
19,523.42
Total
$ 37,721.92
As of February 1983, petitioner's adjusted basis in the Milliken property totaled $ 145,861.92. On June 26, 1974, petitioner incorporated American Metal. Thereafter, American Metal continued to conduct its business activities on the Milliken property, which it leased from petitioner. From the date of its incorporation, American Metal purchased additional equipment and improvements to the Milliken property. American Metal also leased certain buildings and equipment from petitioner. The Milliken property was subject to flooding problems because it was situated 10 feet below street level and had no natural drainage. Because of these water problems, petitioner maintained large *543 water pumps to pump out rain water after every heavy rain. On February 28, 1983, a storm with particularly heavy rains occurred in San Bernardino County. The heavy rainfall combined with the runoff of water from adjacent property flooded the Milliken property. As a result of this storm and flooding, San Bernardino County was declared a Federal Disaster Relief Area. After the flood, the Milliken property was left with standing water approximately 4 feet high. American Metal was forced to shut down its operations for 2 weeks. For another 2 weeks, it was able to receive scrap but was not able to ship scrap that it had sold. Telephone service was interrupted as a result of the high water levels and could not be restored for 3 weeks. Petitioner's office equipment was damaged. American Metal's leased computers were ruined, and its corporate files were destroyed. On May 19, 1983, petitioner, as president of American Metal, filed a proof of loss with American Star Insurance Company for water damage to computer equipment. American Metal leased this computer equipment from Pacific American Leasing Corp. Subsequently, American Star Insurance Company issued a check for $ 23,350 payable *544 jointly to American Metal and Pacific American Leasing Corp. American Star Insurance Company also issued checks totaling $ 65,794.27 payable solely to American Metal. Approximately $ 65,000 of the total insurance proceeds of $ 89,144.27 was remitted to Pacific American Leasing Corp.; the remainder of the insurance was retained by American Metal. Petitioner rented additional pumps to remove the standing water and incurred substantial costs for grading, hauling out mud and debris, hauling in gravel, and repaving roadways. As a result of the flood damage, various items of equipment, including scales, cranes, shears, tractors, trucks, fencing, lighting, and landscaping, were damaged or destroyed. American Metal paid for the repairs and maintenance, both to corporate assets and to assets owned by petitioner personally, necessitated by the flood damage. On its profit and loss statement for the fiscal year ended June 30, 1983, American Metal reflected repair expenses of $ 76,622. On its corporate tax return for the fiscal year ended June 30, 1983, American Metals deducted repair expenses of $ 30,675. Petitioner's shareholder loan account was charged for those items attributable *545 to property owned by him individually. American Metal's bookkeepers, working under petitioner's supervision, were responsible for classifying expenditures as corporate costs or as stockholder loans/advances. Petitioner subsequently repaid the corporate advances made for flood damage to his personal assets. On June 2, 1983, petitioner and American Metal filed a $ 1,873,328 claim against San Bernardino County for flood damage and lost income resulting from improper management of the adjacent Milliken Sanitary Landfill. San Bernardino County rejected this claim because the flood was the result of an "act of God." Subsequently, petitioner consulted several law firms regarding a lawsuit against the county. He did not, however, file suit before expiration of the 6-month period for filing such suits against a county. No appraisal was made of the subject property either before or immediately after the 1983 flood. On its corporate tax return for the fiscal year ended June 30, 1983, American Metal reported a balance of $ 144,032 in petitioner's shareholder loan account. On its corporate tax return for the fiscal year ended June 30, 1984, American Metal reported a balance of $ 337,822 *546 in petitioner's shareholder loan account. On its corporate tax return for the fiscal year ended June 30, 1985, American Metal reported a zero balance in petitioner's shareholder loan account. On their Federal income tax returns for the years in issue, petitioners claimed deductions resulting from the flood partly on their 1982 return and partly on their 1983 return. Specifically, petitioners claimed deductions for business casualty losses of $ 300,000 and $ 143,005 on their 1982 and 1983 returns, respectively. On their 1982 Federal income tax return, petitioners reported the market value of their property before the casualty loss as $ 1,100,000 and the market value of their property after the loss as $ 800,000, resulting in a casualty loss deduction of $ 300,000. On their 1983 return, petitioners reported the market value of their property before the casualty loss as $ 943,005 and the market value of their property after the loss as $ 800,000, resulting in a casualty loss deduction of $ 143,005. For both years in issue, petitioners completed and attached Form 4684, Casualties and Thefts, to their income tax returns. Petitioners disclosed the date of the casualty loss and their *547 estimates of the market value of the property before and after the casualty. Petitioners' returns for both years in issue were prepared by John J. Flaherty (Flaherty), a licensed public accountant in Ontario, California, with over 30 years experience. Flaherty computed the amounts of the claimed casualty loss deductions by estimating the before and after market values of petitioners' property. In making these estimates, Flaherty relied on figures provided to him by petitioner. Respondent disallowed these deductions in full because petitioners had not established (1) the amount of the claimed loss or (2) the fact that any deductible loss was sustained. OPINION Petitioners bear the burden of proving that respondent's determinations are erroneous. Rule 142(a). Particularly with respect to deductions, they must bring themselves within the terms of the applicable statutes. Rockwell v. Commissioner, 512 F.2d 882, 885-886 (9th Cir. 1975), affg. a Memorandum Opinion of this Court. Procedural Matters
In a Notice Setting Case For Trial dated June 6, 1988, the parties *548 were notified that the instant cases were set for trial at a trial session beginning on November 7, 1988. A Standing Pre-Trial Order sent with the notice of trial provided, in relevant part: If any unexcused failure to comply with this Order adversely affects the timing or conduct of the trial, the Court may impose appropriate sanctions, including dismissal, to prevent prejudice to the other party or imposition on the Court. Such failure may also be considered in relation to disciplinary proceedings involving counsel. * * * ORDERED that all facts shall be stipulated to the maximum extent possible. * * * Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown. It is further ORDERED that unless a basis of settlement has been reached, each party shall prepare a Trial Memorandum substantially in *549 the form attached hereto and shall submit it directly to the undersigned and to the opposing party not less than fifteen (15) days before the first day of the trial session. It is further ORDERED that witnesses shall be identified in the Trial Memorandum with a brief summary of the anticipated testimony of such witnesses. Witnesses who are not identified will not be permitted to testify at the trial without leave of the Court upon sufficient showing of cause. * * * ORDERED that all parties shall be prepared for trial at any time during the term of the trial session unless a specific date has been previously set by the Court. * * * The form of Trial Memorandum attached to the order directed the parties to set forth their estimate of time required for trial. By letter dated July 18, 1988, counsel for respondent notified the Court that she was experiencing difficulties in obtaining information from petitioners that would allow the parties either to settle the case or prepare for trial. A copy of this letter was sent to counsel for petitioners. By letter dated September 9, 1988, counsel for respondent notified counsel for petitioners that if petitioners attempted to bring *550 surprise testimony into court, respondent would move to strike such evidence from the record based on petitioners' failure to comply with the Court's Standing Pre-Trial Order. By letter dated September 19, 1988, counsel for petitioners replied to counsel for respondent, enclosing copies of the Court's Standing Pre-Trial Order and of Rule 91 and stating that he could find nothing in either the Order or the Rule that required petitioners to disclose testimony before trial. Counsel for petitioners also stated that he was in the process of preparing petitioners' trial memorandum and provided counsel for respondent with a tentative list of witnesses for petitioners. In accordance with the Standing Pre-Trial Order, respondent's trial memorandum was served on counsel for petitioners on October 20, 1988. Petitioners' trial memorandum, however, was not provided to counsel for respondent or to the Court until the calendar call on November 7, 1988. The stipulation for trial was not ready until the conclusion of the trial. As a result of these and other violations of the Standing Pre-Trial Order, only those witnesses who had been identified in petitioners' September 19, 1988, letter or *551 in respondent's trial memorandum were permitted to testify at trial. The Court scheduled one day, November 9, 1988, for trial of this case, having relied on the 6 hour estimate in respondent's trial memorandum in scheduling other trials for the balance of the trial session. At the close of trial, petitioners requested that the record be held open for testimony by absent witnesses. The witnesses had not been subpoenaed; they had not appeared by 7 p.m., although the trial was scheduled to commence at 9 a.m. Petitioners were permitted to make an offer of proof, but that statement revealed that the testimony of the absent witnesses had little, if any, value. Respondent's counsel (who was from out-of-state) objected on grounds of relevance. Accordingly, the Court ruled that the record would not be held open for that evidence. Petitioners now argue in their (belatedly filed) briefs that they "can offer additional evidence to collaborate [sic] their testimony and provide further evidence of their Casualty Loss." Petitioners are belatedly attempting to offer proof that they failed to secure in a timely fashion. Petitioners' offer of proof at trial did not show the relevancy of the *552 additional testimony offered, and petitioners' briefs do not specify what additional evidence could be provided. In any event, petitioners' failure to present that evidence at trial or otherwise to comply with the Court's orders and rules is totally unexcused. There is no claim made or tenable that seek to offer newly discovered evidence. There is no justification for reopening the record, and we decline to do so. Casualty Loss Deduction
Section 165(c)(1) and (2) allows a deduction to individuals for losses incurred in a trade or business or losses incurred in any transaction entered into for profit. Section 165(c)(3) allows a deduction to individuals for casualty and theft losses. Respondent now agrees that petitioners incurred a casualty loss under section 165(c)(3) but disputes the amount of petitioners' deduction for that loss. Because section 165(i), applicable to disaster losses, applies when the President of the United States determines that a disaster area is entitled to Federal *553 assistance, the loss was, at the election of the taxpayer, deductible in the immediately preceding year, 1982, and pursuant to a net operating loss carryover a deduction was claimed in 1983. Petitioner argues that the value of his property declined $ 300,000 as a result of damage from severe flooding. Respondent argues that the flood caused no loss in value to petitioner's property. In the alternative, respondent contends that petitioner has been fully compensated for any losses sustained and that the claimed casualty loss deduction exceeds petitioners' basis in the property. The amount of a casualty loss deduction is generally computed as the excess of the fair market value of the property immediately before the casualty over the fair market value of the property immediately after the casualty, limited by the adjusted basis of the property. Helvering v. Owens, 305 U.S. 468 (1939); Millsap v. Commissioner, 46 T.C. 751 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. The determination *554 of these respective values "shall generally be ascertained by competent appraisal"; moreover, any such deduction "shall be limited to the actual loss resulting from damage to the property." Sec. 1.165-7(a)(2)(i), Income Tax Regs.
As an alternative, the regulations allow the cost of repairs to the property as evidence of the loss of value. Sec. 1.165-7(a)(2)(ii), Income Tax Regs. The cost of repairs alternative, however, must be based on actual repairs and expenditures, not estimates. Lamphere v. Commissioner, 70 T.C. 391 (1978). In support of the deductions he claims, petitioner argues that the fair market value of his property declined as a result of the flood. Because he failed to obtain appraisals of the fair market value of his property either before or after the flood, petitioner relies on his own estimate of the decline in value. Petitioner testified as to his opinion of the value of his property both before and after the flood. This evidence is too vague and uncertain to establish the fair market value of his land and equipment before and after the flood. We are persuaded, however, that petitioner *555 did suffer a loss. As an alternative to evidence of the decline in value of his property, petitioner argues that he can prove the cost of repairs as a measure of his damages. American Metal apparently paid for the repairs and maintenance, both to corporate assets and to assets owned by petitioner personally, necessitated by the flood damage. On its profit and loss statement for the fiscal year ended June 30, 1983, American Metal reflected repair expenses of $ 76,622. On its corporate tax return for the fiscal year ended June 30, 1983, however, American Metals deducted repair expenses of only $ 30,675. American Metal's bookkeepers, working under petitioners' supervision, were responsible for classifying repair expenditures as either corporate costs or as stockholder loans/advances. Petitioner's shareholder loan account was then charged for those items attributable to property owned by him individually. Petitioner subsequently repaid the corporate advances made to repair his personal assets damaged by the flood. Petitioner, however, failed to produce any receipts, bills, or invoices to substantiate any of these costs of repair. Petitioner argues that his records as well as those *556 of American Metal were destroyed by the flood. Although petitioner's pre- flood records were undoubtedly waterlogged, petitioner's post-flood records of repair costs should have been considerably drier. Respondent contends that all repair costs were paid for and deducted by American Metal. In the alternative, respondent argues that, if the Court determines that petitioner has an otherwise deductible casualty loss, the loss deduction must be limited to petitioner's basis in the property. Respondent admits that repair expenses of approximately $ 46,000 that were reflected in American Metal's general ledger are not reflected on the corporation's tax return. Respondent argues, however, that petitioner has neither established where that difference went nor substantiated that the entry represents anything other than normal, ordinary maintenance costs incurred by the corporation in the normal course of its business. Petitioner determined the amount of the casualty loss without any specific documentation of the fair market value of his property or of the actual amount of expenses incurred to repair the flood damage. In addition, petitioner exaggerated the amount of the loss and now *557 claims deductions that substantially exceed his basis in the property. Despite these credibility problems, we are persuaded that petitioner is entitled to a casualty loss deduction. Where the court is convinced that legitimate expenses were actually incurred, we may, under appropriate circumstances, approximate the amount of expenses that are deductible. Edelson v. Commissioner, 829 F.2d 828, 831-832 (9th Cir. 1987), affg. a Memorandum Opinion of this Court; Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). On consideration of the entire record, we estimate the amount of petitioner's loss at $ 30,000. Respondent argues that petitioner's claimed loss should be reduced by any insurance proceeds received. There is no evidence, however, that petitioner was entitled to or received any of the insurance proceeds. Petitioner argues that, to the extent any repair expenses are disallowed as a casualty loss, those costs should be deductible as ordinary and necessary expenses of carrying on his business of leasing the Milliken property to American Metals. *558 Petitioner also cites Rule 41(b)(2) and asks this Court to allow him to amend the pleadings to conform to this proof. Respondent objects to this new theory to support petitioner's deductions and contends that it is impermissible for petitioner to raise this argument on brief. Petitioner is again attempting to offer arguments and proof that he failed to present in a timely manner. Petitioner presented no evidence to show that the amounts he claims were reasonable, that any amounts were in fact paid, or the business purpose of any payments. We cannot allow any further deductions. Additions to Tax
Section 6653(a)(1) provides for an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the underpayment attributable to negligence. For the purposes of section 6653(a), negligence is the lack of due care or the failure to do what a reasonable and ordinarily prudent person *559 would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Generally, the addition to tax for negligence is not imposed where a taxpayer's deductions are in good faith and based on advice of a competent tax expert. United States v. Boyle, 469 U.S. 241, 250-251 (1985); Otis v. Commissioner, 73 T.C. 671, 675 (1980). To successfully insulate themselves from this addition to tax, however, taxpayers must provide their agents with all relevant information necessary to prepare the return. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). Petitioners' accountant Flaherty prepared their tax returns for the years in issue. In computing the amounts of the claimed casualty loss deductions, however, Flaherty relied on figures provided to him by petitioners. The figures had no validity, and petitioners did not rely on Flaherty's advice concerning the deductions. Under these circumstances, petitioners are liable for the additions to tax under section 6653(a). *560 Section 6661 provides for an addition to tax equal to 25 percent of the underpayment of tax attributable to a substantial understatement of income tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The section 6661 addition to tax is inapplicable, however, if there was substantial authority for the taxpayer's treatment of the items in issue, or if the relevant facts relating to the tax treatment were adequately disclosed on the return. Sec. 6661(b)(2)(B)(i) and (ii). Petitioners substantially underreported taxable income on their tax returns for both years in issue. Petitioners do not argue that there was substantial authority for their position regarding the casualty loss deductions. Petitioners contend, however, that they adequately disclosed the relevant facts affecting the tax treatment of their casualty loss by completing Form 4684. The requirement *561 of adequate disclosure can be satisfied by providing on the return sufficient information to enable respondent to identify the potential controversy involved. Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). Pursuant to section 1.6661-4(c), Income Tax Regs., respondent issued Rev. Proc. 83-21, 1983-1 C.B. 680, applicable to returns filed in 1983, and Rev. Proc. 84-19, 1984-1 C.B. 433, applicable to returns filed in 1984. These Revenue Procedures list categories of controversies and forms that constitute sufficient disclosure for each controversy. Specifically, they list Form 4684, Casualties and Thefts, for the controversy at issue here. Petitioners completed and attached Form 4684 to their income tax returns for the years in issue. Accordingly, this standard had been satisfied here. Based on our examination of the schedules and forms attached to petitioners' 1982 and 1983 tax returns, we conclude that they did adequately disclose therein the facts affecting the tax treatment of their claimed casualty loss, i.e., the nature and amount of the deduction and the manner in which it was calculated by them. *562 Although the amounts were unsupported and exaggerated, respondent was advised of the potential controversy. Petitioners are not liable for the additions to tax under section 6661(a). To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on the entire deficiency.↩