RUDOLPH BRUHNS & AFSA B. MEREDITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bruhns v. Commissioner
Docket No. 2936-89
United States Tax Court
T.C. Memo 1991-88; 1991 Tax Ct. Memo LEXIS 107; 61 T.C.M. (CCH) 2032; T.C.M. (RIA) 91088; March 4, 1991, Filed *107 Decision will be entered under Rule 155. Joseph Onwuteaka, for the petitioners. David E. Whitcomb, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 30,590.46 for taxable year 1983. After concessions, the only issue for decision is whether petitioners may deduct any amount as a casualty loss for taxable year 1983. On September 19, 1983, petitioners' home was flooded. Petitioners filed an insurance claim for the flood damage. The claim was paid virtually in full in 1984. Petitioners claimed a casualty loss deduction on their 1983 Federal income tax return. In light of the flood insurance reimbursement we hold that petitioners have failed to prove losses sufficient to entitle them to a casualty loss deduction under section 165(h). All statutory section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioners
Petitioners were married in 1983. They resided in Houston, Texas, when the petition *108 was filed. Petitioner Afsa B. Meredith is a physician. Rudolph Bruhns was an employee of the Yellow Cab Co., Inc., of Houston during 1983. All references to petitioner are to Dr. Afsa B. Meredith. 2. The Flood
On September 19, 1983, petitioner's neighborhood in southwest Houston along Brays Bayou was flooded. The water level in her house rose to 14-1/2 inches above the floor. The water rose to just below the middle of the wheels of a car parked in petitioner's driveway. The flood lasted three days. Petitioners remained in the house throughout the flood. Because of the damage to petitioner's house, a friend who was an insurance agent recommended that a registered professional engineer be retained to examine the house, and he found extensive damage. Two walls were completely off the foundation by about 18 inches. About 30 percent of the ceilings had failed. The concrete slab under the den cracked and the wood floor buckled two feet into the air. The tile in the bathrooms was cracked one-half inch. There was also considerable damage to the floor, walls, and insulation. 3. Flood Insurance
Petitioner had flood insurance covering the house and its contents. The *109 policies had limits of $ 100,000 for the building and $ 60,000 for the contents. The policies did not cover the driveway or swimming pool. As a result of the flood damage, petitioners filed claims of $ 70,739.79 for the house, and $ 49,871.20 for its contents. Petitioners prepared proof of loss statements for the house and its contents, and submitted them to the insurance company. On April 8, 1984, petitioners received insurance reimbursement of $ 70,234.79 for the structure ($ 505 less than claimed) and $ 49,871.20 for its contents (the full amount claimed). 4. The House
Petitioners' house was built in 1961 on a flood plain subject to periodic problems with high water. The house is one story, wood frame, brick clad, and built on a slab. Interior walls are wallpapered sheet rock. The house has about 4,800 square feet with 10 rooms. It also has an attached garage, a patio, and a swimming pool. The house was purchased in 1968 for $ 57,000 and $ 8,525 in closing costs by petitioner and her former husband, Dr. Ashook Balsaver. Petitioner has lived in the house since 1969. Petitioner and Dr. Balsaver were divorced in 1975. As part of the property settlement, petitioner *110 received title to the house in exchange for payment to Dr. Balsaver. Petitioners spoke with others in their neighborhood and believed that the fair market value of the house before the flood was $ 300,000. They believed that the fair market value of the house after the flood was zero. 5. Personal Property
The flood also damaged some of petitioner's personal property. Petitioner argues here that she should be allowed to deduct losses for damage to several items of personal property. Petitioner has not shown to what extent these items were damaged by the flood, their fair market values immediately before or after the flood, or the adjusted basis of the items. The only item listed not covered by insurance was a Bugatti replica kit car powered by a Volkswagen engine. Petitioner owned it at least from 1978 through the time of trial. Petitioner has not shown its fair market value immediately before and after the flood, or its adjusted basis. 6. Tax Treatment
With extensions, petitioners timely filed a joint income tax return for 1983 on October 15, 1984. Petitioners had adjusted gross income of $ 144,105.29. On Schedule A, petitioners claimed an itemized deduction *111 of $ 52,079.11 for losses caused by the flood. A statement accompanying the return indicates that petitioners claimed on their return that $ 500 of the loss is for the house, and $ 66,868 is for personal property damage. It also claims that the fair market value of personal property after the flood was zero. OPINION 1. Casualty Loss Deduction
Individuals may deduct losses to personal property from a casualty such as the flood in this case. The loss must exceed $ 100 and 10 percent of the adjusted gross income of the individual. Sec. 165(h)(1) and (2)(A)(ii). Section 165(a) excludes amounts compensated by insurance from the deduction. The two methods generally accepted to determine the amount of such loss are the decrease in the fair market value as a result of the casualty, and the cost of repairs method. Lamphere v. Commissioner, 70 T.C. 391 (1978); sec. 1.165-7(a)(2), Income Tax Regs.
The amount of loss is the decrease in the fair market value as a result of the casualty up to the taxpayer's basis in the property. Lamphere v. Commissioner, 70 T.C. at 395-396. On brief, petitioners concede that the alternative method, the *112 cost of repairs method, is not applicable here and so we do not consider it. To be eligible for a casualty loss deduction based on the decrease in the fair market value, petitioners must prove (1) the fair market value of the property before the flood, (2) the fair market value of the property immediately after the flood, (3) the amount of insurance reimbursement, and (4) the adjusted basis in the property. Helvering v. Owens, 305 U.S. 468, 83 L. Ed. 292, 59 S. Ct. 260 (1939); Cornelius v. Commissioner, 56 T.C. 976, 979 (1971); Axelrod v. Commissioner, 56 T.C. 248, 256-257 (1971); Millsap v. Commissioner, 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968). Respondent's determination is presumed correct. Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to the deductions claimed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 78 L. Ed. 1348, 54 S. Ct. 788 (1934); Rule 142(a). Petitioners argue that they are entitled to the casualty loss deduction because they offered evidence relating to the *113 difference between the property's fair market values before and after the loss and the adjusted basis, and respondent offered no contradictory evidence. Respondent contends that petitioners have not proven that their losses exceeded the amount they were compensated by insurance, or the fair market value of the property before and after the loss and its adjusted basis. We agree with respondent. Much of petitioners' evidence was unpersuasive, inaccurate, and uncorroborated. We hold that petitioners have failed to carry their burden of proving they are entitled to deduct casualty losses in addition to their insurance reimbursement. a. The House
On their return, petitioners deducted $ 500 due to damage to the house. Petitioners testified at trial that the fair market value of the house was at least $ 300,000 before the flood and zero after the flood. Petitioners did not indicate whether their estimate included only the house, or also the real property. The record does not include a professional appraisal or other corroboration of petitioners' testimony about value of the property before and after the flood. We recognize that homeowners may testify to the value of their *114 homes; however, the homeowner's testimony is not necessarily sufficient to prove the value. Millsap v. Commissioner, supra at 760. We are not bound to accept that testimony even if it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. Allyn v. Commissioner, T.C. Memo 1980-153, citing Fixel v. Commissioner, T.C. Memo 1974-197, affd. 511 F.2d 1400 (5th Cir. 1969). Petitioners argue that petitioner's Exhibit 4 shows the fair market value of petitioner's house by an appraiser to be $ 268,800. However, petitioner's Exhibit 4 is a proof of loss form signed by petitioner as the insured and submitted to the insurer. There is no indication that the $ 268,800 amount is the conclusion of an appraiser. Petitioners' estimate that the post-casualty value of the house is zero is unconvincing to us. We believe it is improbable, exaggerated, and unreasonable. Allyn v. Commissioner, supra; Fixel v. Commissioner, supra.
b. Personal Property
On their return, petitioners deducted $ 66,868 *115 attributable to personal property damage as a result of the flood. The return also shows their claim that fair market value of personal property was zero after the flood. Petitioners argue that they have produced uncontradicted proof of the reduction in fair market value of the contents of the house due to the flood. We have examined all of their evidence and we disagree with petitioners. Their Exhibit 13 is simply a list prepared by petitioners with a number of attached documents. Petitioners attached a second list entitled "Personal Property not reimbursed by Ins." totaling $ 29,170, and documentation attempting to establish the value of the items on the second list. The first list indicates a total loss of $ 108,775.90, less insurance recovery of $ 49,871.20, leaving a casualty loss of $ 58,904.70. This list essentially contains the same items set forth in petitioner's proof of loss statement for contents, except that amounts have been changed. No justification is provided for the changed amounts. Petitioners were unable to explain the difference between the $ 49,871.20 claim submitted to (and paid by) the flood insurance carrier and the lists prepared by petitioners. *116 Petitioners' second list indicates certain items of personal property such as a Bugatti, coats, paintings, furniture, rugs, and medical books. Petitioners have not convinced us that all of the items were damaged by the flood, or shown the fair market values of the items before and after the flood. Petitioners' evidence of fair market value and basis of various items of personal property consists of an assortment of documents, notes, etc., showing many unidentified or vaguely identified costs. The purpose of some of the expenses is unknown. Some documents apparently seeking to show basis include significant amounts of maintenance costs and other costs not included in basis. Some of the pre- and post-casualty value estimates are unreliable and not close enough to the date of loss to be helpful. The documents included a purported appraisal by an unknown individual who did not physically examine the coat he was to appraise. The documents also included evidence that conflicted with petitioners' position that the fair market value of the property after the flood was zero. For example, a fur appraisal certification that appears to be dated July 17, 1989, indicated a $ 5,000 retail *117 value for insurance purposes only. Another document indicated an offer of $ 45 to purchase a jewelry box after the flood. Another document indicates the jewelry box had an estimated value of $ 4,500 after damage. Many of the documents are not signed, or were signed by unidentified persons. Petitioner's evidence regarding her medical books consists of invoices with an address that appears to be petitioner's medical office rather than her home. Of the personal property petitioners claim to support their casualty deduction, the only item not covered by insurance is the Bugatti kit car. Petitioners attempted to prove a fair market value of $ 11,800 before the flood and $ 800 after the flood. However, petitioner's testimony is not persuasive and the documentary proof is woefully inadequate. For example, petitioners' documentary evidence includes copies of checks with annotations relating to the Bugatti for touch-up paint, license renewal, property tax, exhaust, battery, car radio, fuse box, and merchandise. Some checks mention car repair for a Seville, or simply car repair, and two car tires for an unspecified car. Other checks mention the Bugatti, but offer no explanation for *118 the amount. However these documents and other evidence of repairs do not establish fair market value before or after the flood. The two documents that purport to state estimated fair market values are not convincing. Both were made by individuals who did not inspect the car at any time. Petitioners have not convinced us of the fair market value of the Bugatti either before or after the flood, or its adjusted basis. Moreover, petitioners have not convinced us that the car was damaged as a result of the flood. 2. Insurance Payment
We hold that petitioners have failed to carry their burden of proving the amount of decrease in fair market value due to the flood was in excess of their insurance recovery. Petitioners had flood insurance coverage with policy limits of $ 100,000 for the structure and $ 60,000 for contents of the house. They filed a claim identifying all of the damage caused by the flood. It identified each covered item and stated an amount of monetary damage. Petitioners claimed $ 70,739.79 for damage to the structure. They received $ 70,234.79 as insurance reimbursement, $ 505 less than the amount claimed. Petitioners also claimed $ 49,871.20 for damage *119 to the contents and received that amount in full as insurance reimbursement. Petitioners gave no convincing reason for why they asked for less in insurance reimbursements than they now claim as losses. Petitioner testified that she believed the policy covered 60 percent of the value of the building and its contents. We did not find her testimony persuasive. The policy excluded petitioner's deck and pool, but petitioner provides no evidence of damage to her deck or pool. Casualty loss deductions are limited to the lesser of the adjusted basis of the property or the decrease in the fair market value of the property caused by the casualty. Sec. 165(b). Respondent also contends that petitioners failed to establish that the loss claimed was sustained in 1983 because as of December 31, 1983, there was a reasonable prospect for recovery. In light of our holding above, we need not reach these issues. Due to concessions, Decision will be entered under Rule 155.