T.C. Summary Opinion 2001-122


UNITED STATES TAX COURT


JOSEPH C. MINNEMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13558-99S.                    Filed August 7, 2001.


Joseph C. Minneman, pro se.

<u>Michael F. O'Donnell</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in

effect at the time that the petition was filed.[1]  The decision to

_____

[1] Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 1989,
the only taxable year remaining in issue, and all Rule references
are to the Tax Court Rules of Practice and Procedure.  All
amounts are rounded to the nearest dollar.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioner's Federal income taxes and penalties for fraud under section 6663 for the taxable years 1989, 1990, and 1991.

After concessions by respondent,[2] the issue for decision is whether petitioner overpaid his income tax for 1989. The resolution of this issue turns on whether petitioner sustained a business loss or a personal casualty loss in an amount greater than that conceded by respondent. We hold that petitioner did not; accordingly, we also hold that petitioner did not overpay his income tax for 1989.

## Background

Some of the facts have been stipulated, and they are so found.

---

[2] Prior to trial, respondent conceded the fraud penalty for each of the years in issue. As a consequence, respondent also conceded the deficiency in income tax for each of those years. See generally sec. 6501 relating to periods of limitations on assessment and collection.

Insofar as petitioner's overpayment claim for 1989 is concerned, respondent concedes that petitioner is entitled to a deduction for a casualty loss for that year of $55 (after taking into account the $100 limitation of sec. 165(h)(1) and the 10-percent limitation of sec. 165(h)(2)(A)). However, respondent does not concede that petitioner overpaid his income tax for 1989 because allowance of the $55 deduction has no tax effect, petitioner having claimed the standard deduction for that year.

At the time that the petition was filed, petitioner was in the custody of the U.S. Bureau of Prisons and was incarcerated in Illinois, the State in which he resided immediately prior to his incarceration.

## A.  Petitioner's Education and Occupation

Petitioner graduated from college with a degree in accounting.  Thereafter, from 1967 to 1970, petitioner attended law school.  After earning his degree, petitioner was admitted to the Illinois State bar and entered the private practice of law.

During 1989, 1990, and 1991, the taxable years in issue, petitioner was self-employed as an attorney and maintained a law office in Peoria, Illinois.  Petitioner's practice included litigation.

## B.  Petitioner's 1989 Income Tax Return

Petitioner filed Form 1040, U.S. Individual Income Tax Return, for 1989, listing his occupation as "lawyer".  Petitioner attached to his return Schedule C, Profit or Loss From Business, and reported thereon income and expenses from his law practice. None of the deductions claimed on Schedule C included any deduction for the loss of, or damage to, business property.

On page 2 of his Form 1040, petitioner claimed the standard deduction.  Nevertheless, petitioner attached Schedule A, Itemized Deductions, to his return.  On Schedule A, petitioner claimed deductions for State and local income taxes and

charitable contributions but in a total amount considerably less than the standard deduction. On the line for "Casualty and Theft Losses", petitioner wrote "-0-".

C. Petitioner's Amended Return for 1989

In February 1991, petitioner filed Form 1040X, Amended U.S. Individual Income Tax Return, for 1989 (the amended return). On the amended return, petitioner claimed a refund of $2,958 based on: (1) An alleged casualty or theft loss of personal-use property in the amount of $6,675 (before application of section 165(h)(1) or (2)(A)); and (2) an alleged casualty or theft loss of business-use property in the amount of $15,156. By way of explanation, petitioner included the following statement on his amended return:

> Taxpayer suffered uninsured theft and water damage
> casualty losses on personal property and business
> personal property that taxpayer was holding in storage
> due to lack of residential space and office space.
> Apparently landlord, his agents or previous tenants
> used a key to obtain entry and remove items and either
> landlord, his agents or tenants from the building the
> storage area was attached to used the roof for purposes
> not intended causing the roof to leak which caused
> heavy damage to taxpayer's property stored in such
> building and landlord's insurer would not pay for the
> losses.

To support his claim, petitioner attached Form 4684, Casualties and Thefts, to his amended return. Form 4684 reveals that petitioner computed the claimed losses in the following manner:

Section A:  Personal Use Property              Date of Purchase
  Property A:  Clothes washer                        1981
  Property B:  Lawnmower                            1984
  Property C:  Books, notes, and awards[1]     1964-1970
  Property D:  Lawnseeder                          1982

|                                   |   | Properties | |   |
|-----------------------------------|-------|-------|--------|-------|
|                                   | A     | B     | C      | D     |
| Cost or other basis               | $330  | $240  | $7,150 | $90   |
| Insurance or other reimbursement  | -0-   | -0-   | -0-    | -0-   |
| FMV before casualty/theft         | 300   | 100   | 6,700  | 75    |
| FMV after casualty/theft          | -0-   | -0-   | 500    | -0-   |
| Casualty or theft loss            | 300   | 100   | 6,200  | 75    |

Total:  $6,675 (but reported by petitioner as $6,625)

Section B: Business Use Property               Date of Purchase
  Property A:  Law Library                         1974
  Property B:  Office Furniture                    1983
  Property C:  Office Equipment                1974-1985
  Property D:  Professional Research[2]       1974-present

|                                   |   | Properties | |   |
|-----------------------------------|--------|--------|--------|---------|
|                                   | A      | B      | C      | D       |
| Cost or other basis               | $1,403 | $4,276 | $1,040 | $12,670 |
| Insurance or other reimbursement  | -0-    | -0-    | -0-    | -0-     |
| FMV before casualty/theft         | 10,000 | 1,500  | 2,000  | 20,000  |
| FMV after casualty/theft          | 1,000  | 200    | 350    | -0-     |
| Casualty or theft loss            | 1,403  | 4,276  | 1,040  | 12,670  |

Total:  $19,389 (but reported by petitioner as $15,156, a discrepancy
       unexplained in the record)

[1]The category of "books, notes" represents petitioner's classroom notes and law books (case books, horn books, and Gilbert's outlines) from law school, which he attended from 1967 to 1970.  The category of "awards" represent plaques and trophies "and things like that" that petitioner received in the mid-1960s in recognition of his service as a local school board member.

[2]The category of "professional research" represents client files and includes petitioner's work product.

Respondent's disposition of petitioner's claim for refund is discussed infra in subdivision E of our findings of fact.

## D.  Petitioner's Indictment and Conviction

In March 1996, petitioner was indicted under 18 U.S.C. sec.

371 for conspiracy to defraud the United States by impeding the collection of income tax by the Internal Revenue Service (IRS). In June 1997, following a jury trial, petitioner was found guilty, and judgment was entered by the U.S. District Court for the Central District of Illinois. Petitioner was sentenced to 30 months' imprisonment and 3 years of supervised release and ordered to pay $25,000 in restitution to the IRS.

Petitioner appealed his conviction, but it was affirmed by the Court of Appeals. United States v. Minneman, 143 F.3d 274 (7th Cir. 1998). Petitioner's subsequent motion to vacate his sentence pursuant to 28 U.S.C. sec. 2255 was denied by the District Court in August 1998, and the Court of Appeals declined to issue a certificate of appealability. Appeals filed by petitioner from other adverse orders of the District Court were equally unsuccessful on appeal. United States v. Minneman, 87 AFTR 2d 2001-1920 (7th Cir. 2001).[3]

E. The Notice of Deficiency

In May 1999, after the completion of an examination that had commenced several years earlier, respondent issued a notice of deficiency to petitioner. In the notice, respondent determined deficiencies in petitioner's Federal income taxes for 1989, 1990,

---

[3] At the time of trial, April 2001, petitioner had been disbarred from the practice of law. Whether petitioner was disbarred because of his felony conviction for conspiracy or for some other reason(s) is not disclosed in the record.

and 1991, as well as fraud penalties under section 6663 for those same 3 years.

In the notice of deficiency, respondent also allowed in part and disallowed in part petitioner's claim for refund for 1989 (made pursuant to petitioner's amended return for that year). Thus, respondent allowed petitioner a deduction for a casualty loss for 1989 in the amount of $55 (after taking into account the $100 limitation of section 165(h)(1) and the 10-percent limitation of section 165(h)(2)(A)). In computing the deficiency for 1989, respondent did not take this deduction into account because the deduction, together with petitioner's other itemized deductions, was less than the standard deduction to which petitioner was otherwise entitled. See sec. 63(c).

F.  Petitioner's Testimony at Trial

At trial, petitioner testified that he was divorced in 1989; that after his divorce he relocated to another residence and another law office; that he rented a private garage in order to store excess belongings; and that he subsequently discovered that some of his belongings (namely, a washing machine, a lawnmower, and a lawnseeder) had been removed from the garage and that his remaining belongings (namely, books, notes and awards, law library, office furniture and equipment, and "professional research") had sustained water damage. In addition, petitioner testified that he filed a police report; that he commenced an

action against the owner of the garage but recovered nothing; and that no part of his loss was covered by insurance or was otherwise reimbursable.

## Discussion

We begin with two fundamental principles that serve to guide the decisional process.

First, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Deputy v. duPont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933); cf. sec. 7491(a) (applicable generally to court proceedings arising in connection with examinations commencing after July 22, 1998).

Second, the fact that a taxpayer reports a deduction on the taxpayer's income tax return is not sufficient to substantiate the deduction claimed on the return. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974). A tax return is merely a statement of the taxpayer's claim; the return is not presumed to be correct. Wilkinson v. Commissioner, supra at 639; Roberts v. Commissioner, supra at 837; see also Seaboard Commercial Corp. v. Commissioner, 28 T.C. 1034, 1051 (1957) (a taxpayer's income tax return is a self-serving declaration that may not be accepted as proof for

the deduction or exclusion claimed by the taxpayer); Halle v.
Commissioner, 7 T.C. 245 (1946) (a taxpayer's return is not self-
proving as to the truth of its contents), affd. 175 F.2d 500 (2d
Cir. 1949).

We turn now to the substantive law that controls our
disposition of the disputed issue.

As a general rule, section 165(a) allows as a deduction any
loss sustained during the taxable year and not compensated for by
insurance or otherwise.  However, in the case of an individual,
section 165(c) limits the deduction to:  (1) Losses incurred in a
trade or business; (2) losses incurred in any transaction entered
into for profit, even though not connected with a trade or
business; and (3) losses of property not connected with a trade
or business or with a transaction entered into for profit, if
such losses arise from fire, storm, shipwreck, or other casualty,
or from theft.

The amount of a casualty loss is generally the lesser of the
taxpayer's adjusted basis in the property or the diminution in
the fair market value of the property caused by the casualty.
Sec. 1.165-7(b)(1), Income Tax Regs.; see Helvering v. Owens, 305
U.S. 468, 471 (1939); Lamphere v. Commissioner, 70 T.C. 391, 395
(1978).  The amount of a theft loss is determined similarly,
except that the fair market value of the property immediately
after the theft is considered to be zero.  Sec. 1.165-8(c),

Income Tax Regs.

In the case of a loss described in section 165(c)(3), the loss is allowed only to the extent that the amount of the loss arising from each casualty, or from each theft, exceeds $100, and then only to the extent that the aggregate amount of such losses exceeds 10 percent of the taxpayer's adjusted gross income.  Sec. 165(h)(1), (2)(A).

In determining the amount of loss deductible under section 165, the taxpayer's adjusted basis in the property is the amount of the adjusted basis prescribed in section 1.1011-1, Income Tax Regs., for determining the loss from the sale or other disposition of the property involved.  Sec. 1.165-7(b)(1)(ii), Income Tax Regs.; see sec. 1.165-1(c)(1), Income Tax Regs.  Under section 1.1011-1, Income Tax Regs., adjusted basis is the cost or other basis of property under section 1012, adjusted to reflect allowable deductions for depreciation under section 1016.

Also in determining the amount of loss deductible under section 165, "fair market value" means "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts."  Sec. 1.170A-1(c)(2), Income Tax Regs.; sec. 20.2031-1(b), Estate Tax Regs.; see Gay v. Commissioner, T.C. Memo. 1980-19; Black v. Commissioner, T.C. Memo. 1977-337.  The fair market value of the

property immediately before the casualty and the fair market value of the property immediately after the casualty must generally be ascertained by competent appraisal. Sec. 1.165-7(a)(2)(i), Income Tax Regs.

At trial, petitioner boasted that "I've kept very detailed records." Nevertheless, petitioner, a former practicing attorney with litigation experience and a degree in accounting, failed to introduce one shred of documentary evidence regarding his adjusted basis in any of the items of property involved. Similarly, petitioner failed to introduce one shred of documentary evidence regarding the fair market value of any of those items. It is well established that if a taxpayer fails to prove the taxpayer's adjusted basis in the property involved, no casualty loss is allowable. Zmuda v. Commissioner, 79 T.C. 714, 727 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Millsap v. Commissioner, 46 T.C. 751, 760 (1966), affd. 387 F.2d 420 (8th Cir. 1968); see sec. 1.6001-1(a), Income Tax Regs. (requiring taxpayers to maintain records sufficient to permit verification of losses).

On brief, petitioner asks that we apply the approach used in Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), and approximate the amount of his alleged losses. Although we have occasionally followed that approach in other cases when it has been appropriate to do so, e.g., Daniel v. Commissioner, T.C.

Memo. 1997-328, this is not such a case.

We have consistently held that we will not apply the Cohan approach unless the taxpayer presents evidence sufficient to provide some rational basis on which an estimate may be made. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Without such evidence, any allowance would amount to unguided largesse. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); see also Millsap v. Commissioner, supra.[4]

In the present case, petitioner offered no evidence whatsoever that would provide a rational basis on which an estimate might be made. In this regard, we note that petitioner offered nothing other than his own testimony. However, petitioner's testimony was invariably conclusory, frequently improbable, and occasionally fantastical. See Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972) (the Tax Court is not required to accept a taxpayer's testimony if it is improbable, unreasonable, or questionable), affg. T.C. Memo.

---

[4] The following passage from Millsap v. Commissioner, 46 T.C. 751, 760 (1966), affd. 387 F.2d 420 (8th Cir. 1968), is particularly apt:

> There have been cases where a failure of proof on the issue of basis has been overlooked to permit the allowance of a small casualty loss deduction where it could reasonably be inferred from other facts of record that the allowed amount did not exceed basis, but this is not such a case. We do not feel that application of the Cohan rule is appropriate here on the question of basis. [Fn. ref. omitted.]

1970-335; <u>MacGuire v. Commissioner</u>, 450 F.2d 1239, 1244 (5th Cir. 1971) (same), affg. T.C. Memo. 1970-89; <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 212 (1992) ("The Court is not required to accept petitioner's self-serving testimony."); <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986) ("we are not required to accept the self-serving testimony of petitioner * * * as gospel"). Thus, by way of example, we regard as a flight of fancy petitioner's assertion that his personal notes and books from law school, which he attended from 1967 to 1970, together with some plaques and trophies "and things like that" from his days as a member of a local school board in the mid-1960s, had an adjusted basis of $7,150 and a fair market value of $6,200 in 1989.[5]

---

[5] The following colloquy between the Court and petitioner is particularly revealing:

> THE COURT: So a law student going to law school, let's say, in 1989 or 1990 -- do you think they would be willing to pay $5,000 for these 20-year-old books in lieu of buying current books at the law school?
>
> PETITIONER: Well, now, I don't want to be facetious, Your Honor. I do know --
>
> THE COURT: You're having trouble keeping a straight face, so I think you've kind of given us an answer.
>
> PETITIONER: No, I'm not laughing about that. I was thinking of something that occurred when I was going to law school. It was when we freshmen came in, there was always a sophomore or senior who was always willing to sell us a book that we -- wasn't being used,

(continued...)

In addition, the record does not demonstrate that any water damage that petitioner's personal-use property might have sustained was caused by a casualty within the meaning of section 165(c)(3).  Thus, on cross-examination, petitioner conceded that his property was not damaged by flood; rather, petitioner asserted that the rented garage was not "in proper repair" and that the roof leaked.  However, the law is clear that progressive deterioration of property through a steadily operating cause does not give rise to a casualty loss.  See United States v. Lattimore, 353 F.2d 379, 381 (9th Cir. 1965); see also Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941); Maher v. Commissioner, 76 T.C. 593, 599-600 (1981), affd. 680 F.2d 91 (11th Cir. 1982);

---

[5](...continued)
you know.

THE COURT:  That was maybe one year or two years out of date.

PETITIONER:  But they was [sic] trying to, you know, pull a, you know, a fast one on incoming freshmen, which is neither here nor there, I'm sure.

Equally revealing is petitioner's assertion that his 20-year-old tax code had value because "the Tax Code hadn't been amended until -- what -- 1988?  It was not out of date."  Yet this testimony blithely ignores such major tax acts as the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829; the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520; the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763; the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172; the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324; the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494; the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085; and the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342.

Whiting v. Commissioner, T.C. Memo. 1975-38.

Moreover, we do not comprehend how petitioner could have had an adjusted basis of $12,670 in "professional research". Any costs that petitioner had incurred in producing such "research" would have been expensed on a Schedule C and/or billed to his clients.

Finally, we are not convinced that any of petitioner's property was either stolen or damaged by water. See Diaz v. Commissioner, 58 T.C. 560, 564 (1972) (distilling truth from the testimony of witnesses, whose demeanor we observe and whose credibility we evaluate, is "the daily grist of judicial life"); Kropp v. Commissioner, T.C. Memo. 2000-148 ("As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe."). Significantly, petitioner failed to introduce a copy of the police report that he allegedly filed; likewise, petitioner failed to introduce a copy of the civil complaint that he allegedly filed against the owner of the garage. Documents such as these should have been readily obtainable; indeed, petitioner implied that they were in his possession. Petitioner's failure to introduce them justifies a negative inference. See Recklitis v. Commissioner, 91 T.C. 874, 890 (1988); Pollack v. Commissioner, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); Wichita Terminal Elevator Co. v.

Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

In view of the foregoing, we hold that petitioner is not entitled to a loss deduction under section 165 in any amount greater than that conceded by respondent.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issue, as well as respondent's concessions,

> Decision will be entered for respondent as to the overpayment in income tax for 1989 and for petitioner as to the deficiencies in income taxes and penalties under section 6663.