T.C. Summary Opinion 2011-121

UNITED STATES TAX COURT

ROBERT DAVID WUERTH & CYNTHIA WUERTH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28637-09S.              Filed October 13, 2011.

Robert David Wuerth and Cynthia Wuerth, pro sese.

<u>Stewart Todd Hittinger</u>, for respondent.


COHEN, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies and penalties as follows:

|  |  | Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 2005 | $8,601 | $1,720.20 |
| 2006 | 5,442 | 1,088.40 |

After concessions, the issues remaining for decision are:  (1) Whether petitioners are entitled to deduct a casualty loss for 2005 relating to damage to their real property and (2) whether petitioners are liable for penalties under section 6662 for 2005 and 2006.  All section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Indiana at the time the petition was filed.

Robert David Wuerth (petitioner) and Cynthia Wuerth purchased a home in Newburgh, Indiana, in 1989.  The two-story house has an attached three-car garage and is on a wooded lot of approximately 1 acre.

During the years in issue, petitioner taught graduate courses in accounting at various online universities and was licensed as a certified public accountant (C.P.A.).  Petitioner

performed many of his duties as an adjunct instructor from a home office in petitioners' residence.

DeVry University, one of petitioner's employers, paid petitioner's earnings to Wuerth Asset Management, LLC (Wuerth Management), a limited liability company petitioners formed in 2000 and classified as a partnership for Federal tax purposes. Petitioners each owned 50 percent of Wuerth Management. From the time it was formed through the years in issue the ownership structure of Wuerth Management did not change.

On November 6, 2005, petitioners' property, both lot and improvements, suffered damage as a result of a tornado. Petitioners filed a claim under their homeowners insurance policy for the sustained damage. The policy had a $500 deductible, and petitioners received insurance reimbursements totaling $37,524. Petitioners paid outside contractors $27,353 for cleanup and repairs following the tornado. Petitioner cleaned up part of the property over the course of the next several years.

Petitioners jointly filed their self-prepared Form 1040, U.S. Individual Income Tax Return, for 2005. On Form 4684, Casualties and Thefts, included with their Form 1040, petitioners claimed a casualty loss of $40,355 relating to their residence and a casualty loss relating to a damaged vehicle. Wuerth Management also claimed a casualty loss deduction of $7,121 for petitioners' residence on the 2005 Form 1065, U.S. Return of

Partnership Income, that petitioner prepared as he believed this was necessary because he used a portion of the residence as a home office.

Petitioners' 2005 Form 1040 indicates that they determined the amount of the real property casualty loss using a fair market value of $229,500 for the real property before the tornado and $157,250 after the tornado, less $31,895 in insurance proceeds. Petitioner calculated these values using his own research and personal estimates of the financial damage caused by the storm.

On the Wuerth Management Forms 1065 for 2005 and 2006, numerous other deductions were claimed for purported business expenses, including television service, travel, and meals and entertainment. These deductions reduced the income from Wuerth Management that passed through to petitioners and was reported on their 2005 and 2006 Forms 1040.

In 2008, the Internal Revenue Service (IRS) examined petitioners' returns for 2005 and 2006. During the course of the examination, petitioner hired an appraiser to determine the value of the Indiana real property both before and after the tornado. The appraiser had not personally appraised the property before the damage occurred and relied on the statements petitioner made regarding its previous condition. The appraiser ultimately determined that the market value of the property before the tornado was $250,000 and after the tornado was $117,000. The

appraisal report included numerous errors, including misstating the calculations for the pre-tornado value of the real property as totaling $220,000 and $240,000 at different points in the report.

The IRS sent petitioners a notice of deficiency on September 16, 2009. In the notice, the IRS determined that petitioners sustained the full amount of the loss claimed for their vehicle and $16,363.90 of the loss claimed for the real property for 2005. The IRS disallowed deductions that Wuerth Management claimed for 2005 and 2006 that resulted in an increase to petitioners' income as reported on their 2005 and 2006 Forms 1040.

Petitioners provided documentation as substantiation for some of the claimed expenses, and respondent conceded that petitioners were entitled to some deductions beyond what was allowed in the notice. During the trial, petitioners conceded that they were not entitled to the remaining claimed deductions for 2005 and 2006, with the exception of the casualty loss deduction for their real property claimed for 2005.

<u>Discussion</u>

<u>Casualty Loss Deduction Relating to Real Property for 2005</u>

The parties agree that petitioners sustained a casualty loss in 2005 within the meaning of section 165(c)(3). That section provides that, in the case of an individual, the deduction under

section 165(a) shall be limited to "losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty". Sec. 165(c)(3). Deductions for casualty losses are limited to those not compensated for by insurance or otherwise. Sec. 165(a). Respondent agrees that petitioners' property suffered damage from a severe tornado and as a result petitioners' property lost value. However, respondent disputes petitioners' assertion that they are entitled to a greater deduction for 2005 for casualty loss than was allowed in the notice of deficiency.

The amount of a casualty loss deduction is generally computed as the excess of the fair market value of the property immediately before the casualty over the fair market value of the property immediately after the casualty, limited by the adjusted basis of the property. Helvering v. Owens, 305 U.S. 468 (1939); Millsap v. Commissioner, 46 T.C. 751 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. These respective values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(I), Income Tax Regs. Alternatively, the amount of a casualty loss may be established by reasonable repair costs paid to restore property to its precasualty condition. Sec. 1.165-7(a)(2)(ii), Income Tax Regs. The cost of repairs alternative, however, must be calculated

using the actual repair costs, not estimates. Lamphere v. Commissioner, 70 T.C. 391, 396 (1978).

As a general rule, taxpayers have the burden of proving that they are entitled to the deductions that they claim. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Under section 7491(a), the burden of proof shifts to respondent if petitioners complied with requirements to substantiate an item, maintained all required records, and presented credible evidence as to a factual issue. Petitioners have not done so, and thus the burden has not shifted.

For 2005 petitioners divided the real property casualty loss deduction they claimed between their Form 1040 and the Form 1065 that was filed for Wuerth Management. Petitioners have presented no evidence and made no argument that any portion of their Indiana real property was the property of a business entity. We agree with respondent that the property and the casualty loss were personal.

Essentially, petitioners present three methods of valuation to justify their assertion that the casualty loss was greater than the amount that the IRS allowed in the notice of deficiency. First, petitioners argue that the costs of clearing fallen trees from the property exceeded the allowed deduction. Petitioner testified that he received several estimates of approximately $50,000 to clean up what he claims is only 20 percent of the

property, with the remaining 80 percent already addressed by petitioner himself.  If repair costs are to be used as an alternative method of valuation, the taxpayer must substantiate the actual costs, not merely provide estimates.  Farber v. Commissioner, 57 T.C. 714, 719 (1972); sec. 1.165-7(a)(2)(ii), Income Tax Regs.  The only actual uncompensated expenditure petitioner claimed to have made was $8,950 to a landscaping company to clear some fallen trees and debris in 2006. Petitioners did not present any receipt into evidence to substantiate this or any other expense relating to the cleanup of their property.  The evidence presented is insufficient to justify a casualty loss for 2005 higher than the deduction allowed in the notice of deficiency.

Second, petitioner argues that his estimate of the damages used to derive the figure as reported on the tax returns is accurate.  Although petitioner argues that he used a "sophisticated" appraisal method, his description of how he arrived at the values used is riddled with approximations that are not substantiated by any evidence other than petitioner's flat assertions.

Petitioner claims that he began with a fair market value for the property before the tornado of $250,000.  He concluded that the property lost 10 percent of its value because of a decrease in the property's aesthetic value because of the fallen trees,

which he admits is simply a hypothesized value rather than a justifiable calculation. He also subtracted $79,000 for "lot clearing costs" and $18,198 for "landscaping fix up costs" based on the same estimates described above. Finally, he subtracted $28,125 for "profit on real estate to cover high inherent risk", in all totaling $150,823 in losses. These self-serving estimates did not use any recognized method of real property valuation, are only conjecture, and do not justify petitioners' casualty loss deduction beyond that allowed by respondent.

Petitioner also presented at trial photographs of the property taken before the tornado and others taken after, which show fallen trees and other damage. These photos are insufficient to show the extent of the damage or to determine the monetary harm caused to the property by the casualty.

Third, petitioners offer as evidence an appraisal completed in November 2008. This appraisal, however, merely serves as a restatement of petitioners' unsubstantiated estimates. The appraiser did not personally evaluate the property before the tornado damage and relied heavily on petitioner's statements to justify the retrospective appraisal of the property. The appraiser also relied on the estimates petitioner obtained for cleanup and excavation costs described above to determine the value of the property immediately after the loss. The information petitioner provided to the appraiser is extremely

favorable to petitioners' position as to the amount of the casualty loss and is not corroborated by any other evidence. We need not consider an expert's opinion when that expert is merely an advocate for one of the parties. See Estate of Halas v. Commissioner, 94 T.C. 570, 577 (1990). Furthermore, the appraisal report has numerous errors, including calculations showing the pre-tornado value of the home as $220,000, $240,000, and $250,000. Such errors call into question the reliability of the appraisal, and thus the report does not provide adequate support for petitioners' position. See, e.g., Knight v. Commissioner, 115 T.C. 506 (2000).

Petitioner makes numerous accusations of improper behavior by IRS agents and attempts to discredit the valuation the IRS used during administrative appeals. These arguments are irrelevant. We review the merits of the case de novo and do not consider any record created during internal IRS appeals procedures. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974).

Petitioners have not proven that the amount of the casualty loss sustained, after accounting for insurance proceeds, is greater than the amount allowed in the notice of deficiency. We therefore sustain respondent's determination as to the casualty loss deduction relating to the real property for 2005.

Section 6662(a) Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20-percent accuracy-related penalty on any underpayment of Federal income tax attributable to taxpayers' negligence or disregard of rules or regulations or substantial understatement of income tax. Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as any careless, reckless, or intentional disregard. Disregard of rules or regulations is careless if taxpayers do not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. A substantial understatement of income tax exists if the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority. See Rule 142(a);

Higbee v. Commissioner, supra at 446-447.  Considering the inaccuracy of the items on the returns and the amounts of the resulting underpayments of tax, respondent has satisfied the burden of producing evidence that the penalties are appropriate.

The accuracy-related penalty under section 6662(a) is not imposed with respect to any portion of the underpayment as to which taxpayers acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, supra at 448.  The decision as to whether taxpayers acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners did not provide any evidence that they relied on professional advice.  See sec. 6662(d)(2)(B).  Petitioner admits that the basis for the valuation of the property was his own approach based on estimates and intuition rather than any accepted methods of valuation or professional assistance. Despite his background as an instructor in accounting and licensed C.P.A., petitioner did not determine a reasonable value for the damage to the property.  Furthermore, petitioner's testimony with respect to the now conceded personal expenses that petitioners deducted as business expenses demonstrates a lack of a reasonable attempt to comply with the law.  Petitioners are therefore liable for the penalties imposed for 2005 and 2006.

We have considered the other arguments of the parties, and they are either without merit or need not be addressed in view of our resolution of the issues.  For the reasons explained above,

<u>Decision will be entered</u>

<u>under Rule 155</u>.